**DOYLE v. COMMISSIONER OF INTERNAL REVENUE.**

No. 208.

Circuit Court of Appeals, Second Circuit.

March 4, 1940.

Thomas M. Wilkins, of Washington, D. C., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

The petitioners, husband and wife, filed joint income tax return for 1934. They filed their returns on a cash basis. The Commissioner determined that an alleged profit of $60,000 should have been included as income in that year, and gave notice of a deficiency in tax. The Board of Tax Appeals sustained the Commissioner.

The alleged profit came from a contract to sell a house. The petitioners in 1903 purchased a house in New York City for $17,000, with title taken in the name of the wife. The value on March 1, 1913 was claimed by the petitioners to be $90,000. This was controverted by the Commissioner, and no value was proved. In 1929 the wife made a contract to sell the house to Tishman Realty and Construction Company for $185,000. $35,000 was paid at the signing of the contract in 1929; $10,000 was to be paid by the purchaser taking subject to a mortgage of that amount against the premises; the balance, $140,000, was to be paid against delivery of deed at the date set for closing, June 10, 1930. The contract provided that the purchaser might have an extension of the closing date to June 10, 1931 on payment of a further sum of $25,000 on or before June 10, 1930. The petitioners remained in possession of the property. In June 1930 the Tishman company availed itself of the right to the extension and paid the agreed $25,000. On the day fixed for closing in June 1931, the petitioners tendered a proper deed and demanded payment of the balance of the

purchase price, $115,000. The Tishman company pretended that the title was defective and refused to go through with the sale. The petitioners directed their lawyer to bring suit for specific performance. The lawyer delayed in the hope of a settlement, but finally, in February 1933, brought suit for specific performance, demanding that the Tishman company be compelled to pay the $115,000 balance against delivery of deed. The Tishman concern defended on the merits and made counterclaim for the $60,000 that had been paid. The case was tried, and in 1934 the court dismissed both the complaint and the counterclaim. The court held that the purchaser's objections to the title were pretences made in an effort to get out of a bad bargain, but denied specific performance because of the delay in commencing suit. So the upshot was that the petitioners were left with the real estate and the $60,000 received on account of the price. The Commissioner took the view that the $60,000 was income for 1934, and determined a tax deficiency for 1934 accordingly. The petitioners say that the $60,000, if income at all, was income for 1931 at the very latest.

The $60,000 was manifestly income. Before the transaction the petitioners had only the house. After the transaction they had the house and $60,000. The $60,000 was a gain or profit from "dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property," within the scope of section 22(a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code § 22(a). The serious question is whether it was income for the year 1934.

The $35,000 received in 1929 was not income for that year. Likewise the $25,000 received in 1930 was not income for that year. Each of these sums was a payment down on account of a total purchase price of $185,000, agreed to be paid against delivery of deed in a succeeding year. The petitioners still had possession of the real estate, and the contract was in the executory stage. Earnest money received by the vendor of real estate in the year when an executory contract to sell real estate is made does not constitute taxable income for that year, where it is clear that the sale is not intended to be closed until a later year. Bedell v. Commissioner, 2 Cir., 30 F.2d 622; Bourne v. Commissioner, 4 Cir., 62 F.2d 648; cf.

Commissioner v. Union Pacific R. Co., 2 Cir., 86 F.2d 637. Money so received is part of the sale price and is taken into account against the cost of the property in determining gain or loss when the transaction is carried out. We have not overlooked the petitioners' argument that the $25,000 received in 1930 was not part of the price but was an outright bonus paid by the prospective purchaser for extension of the closing date. The Board found that the $25,000 was a payment to be applied against the purchase price. The finding was correct, as shown by the contract, referring as it does to the "further sum of $25,000", and as also shown by the complaint in the suit against the purchaser. In the complaint, the petitioners gave credit for the $25,000 as well as for the first payment of $35,000, and demanded only $115,000 as the unpaid part of the price.

The argument for 1931 as the year when the profit was realized is somewhat stronger. In 1931 the purchaser declined to go through with the sale, ostensibly because of petty blemishes in the title, actually because the market had fallen. The petitioners then had the right as matter of law to treat the transaction as ended, keeping the $60,000 already received as well as the house. Page v. McDonnell, 55 N.Y. 299; Lawrence v. Miller, 86 N.Y. 131. Had they done so, it may be granted that the $60,000 would have been income realized in 1931. But they decided that they would rather have the rest of the price than the house, and they directed their lawyer to sue for specific performance and compel the purchaser to go through with the contract. By their decision the contract was kept alive for future consummation, as much so as if the parties had agreed on an extension of the closing date. The contract to sell the house was still in the executory stage, and no income was realized in 1931. The transaction remained in that condition until 1934, when the judgment of the court put an end to it and fixed the rights of the parties. See Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. Not until then was the $60,000 severed from a prospective sale of real estate and realized as a clear profit. The situation is the same as if the petitioners had insisted on the sale until 1934 and had then terminated the transaction by exchanging mutual releases with the purchaser; in such a case the payments received by the vendors on account of the

price would be income for 1934. Both on principle and on considerations of a practical character, the decision that the $60,000 was income of the petitioners for 1934 was sound.

Virginia Iron Coal & Coke Co. v. Commissioner, 4 Cir., 99 F.2d, 919, is analogous. There the taxpayer received moneys in 1930 and 1931 in consideration of granting an option on real estate owned by it. The option provided that the moneys were to be credited on the purchase price in case the holder of the option elected to purchase. In 1933 the holder of the option abandoned it. The moneys were held to be income in 1933, since it was not known until then whether they were mere payments for the option or were advance payments on the purchase of the real estate.

Affirmed.