## CAPITAL WAREHOUSE CO., Inc. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13788.

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1948.

James S. Delehanty and Dennis D. Daly, both of St. Paul, Minn., for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack, A. F. Prescott, and Harry Baum, Sp. Asst. to Atty. Gen., for respondent.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

The petitioner is a Minnesota corporation engaged in the public warehouse business at St. Paul, Minnesota. It keeps its books and files its Federal income tax returns on the accrual basis. There are involved here its income taxes, its declared value excess-profits taxes and its excess-profits taxes for the first two years of its existence, that is, its fiscal years ending May 31, 1943, and May 31, 1944.

The sole question presented is whether the respondent was right in his determination that the petitioner could not for the taxable years involved exclude from its gross income that portion thereof which it had set aside on its books as a reserve fund to cover its contractual liability to its customers to remove merchandise from its warehouse at the end of the storage period.

The Tax Court held that respondent was right (9 T.C. 966), and the petitioner seeks a review and reversal of that decision.

The controlling facts are not in dispute. Upon receipt of merchandise for storage, customers, designated depositors, were required to pay, in a single amount, a charge in accordance with the terms of various contracts, for the handling into and out of the warehouse. The charges thus made for handling were credited on petitioner's books to an account designated "handling revenue." This account included the cost of moving goods when received from the cars into the warehouse, loading the goods from the warehouse back into cars when they were ordered out, and various incidental charges.

For the purpose of determining its liability to its customers for "handling out" charges at the end of each fiscal year, petitioner set up on its books an account designated "Reserve for Handling Out." To determine the amount of such liability an inventory was taken of stored merchandise on hand at the end of the year and not delivered but for which a handling charge had been made and collected. Of the total handling charge which had been made and collected on the merchandise shown on

such inventory 60% thereof was allocated to the estimated cost of handling out and 40% to the cost of handling in. The division so made was based upon experience within the industry. This allocation, the Tax Court found, was made by other warehouse concerns because merchandise came into their warehouses in carload lots and left in less than carload lots, thus requiring a greater expenditure for handling out than for handling in. The merchandise stored by petitioner, however, later developments disclosed, was shipped out in carload lots. On the basis of the allocation so made the petitioner, after taking the inventory at the end of the fiscal year, adjusted its books to show petitioner's liability to its customers for merchandise then in storage and for which it had not performed its contract to handle out upon order.

The unearned handling out charges thus determined at the end of each fiscal year were claimed as deductions by the petitioner on its Federal income tax returns for each of the fiscal years under review and denied by the respondent. In his notice of deficiency, the respondent determined that the amounts placed in the reserve in each of the taxable years did not represent deferred income and that said amounts should be included in gross income.

The petitioner contends that under §§ 41 and 42 of the Internal Revenue Code, 26 U.S.C.A. §§ 41, 42, a public warehouse company may accrue as a deductible item of expense the cost of removing from its warehouse goods stored therein for which removal it had previously been paid, and that the Tax Court erred in denying its right to do so.

■ The law controlling the controversy is clear and well established. Both the allowance and the extent of deductions depend "upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." New Colonial Ice Co., Inc., v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348; Shapleigh Hardware Co. v. United States, 8 Cir., 81 F.2d 697.

Section 23 of the Internal Revenue Code, 26 U.S.C.A. § 23, provides that "In computing net income there shall be allowed as deductions: (a) (1) (A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

And § 41 provides: "General Rule. The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but * * * if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *"

■ It is settled by many decisions of the Supreme Court that Federal income taxes are assessed on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period; and that he may not accrue an expense the amount of which is unsettled or allocate "income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay has become final and definite in amount." Security Flour Mills Co. v. Commissioner of Internal Revenue, 321 U.S. 281, 64 S.Ct. 596, 599, 88 L.Ed. 725, and cases cited.

"If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." North American Oil Consolidated v. Burnet Commissioner, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197.

And "* * * in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid * * *." Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 420.

■ Applying the tax statute as thus construed by the Supreme Court there is

no basis for the contention that the Tax Court erred in its decision. Certainly the amount of the taxpayer's liability to its customers for the expense of loading out their merchandise in future years was not "fixed" in the taxable year nor did the particular event upon which the amount depended occur in the taxable year. That event was the determination of the actual cost of loading out at the time the merchandise was ordered out by the customer. Here the petitioner has only estimated such cost.

The same point was before the court in Spencer, White & Prentis, Inc., v. Commissioner, 2 Cir., 144 F.2d 45, 46. The court there said: "* * * the fact that payments would have to be made by the taxpayer in a future year for work which had not been done in the year in question [the taxable year] did not give rise to a proper tax deduction. * * * Here the work for which the deduction is sought was unperformed and its cost was * * * no more than a fair estimate. Such a deduction * * * had not accrued 'during the taxable year.'" See, also, Fleischer v. Commissioner, 8 Cir., 158 F.2d 42; Clay Sewer Pipe Ass'n v. Commissioner, 3 Cir., 139 F.2d 130; South Dade Farms, Inc., v. Commissioner, 5 Cir., 138 F.2d 818. In the latter case the court affirmed a decision of the Tax Court holding that where income of a taxpayer, on the accrual basis, was derived from rental of farm land, rentals paid in advance for future years are income in the year received.

It is true petitioner's liability, that is its obligation to pay the cost of "handling out", had become final during the taxable years in the sense that it was not a contingent liability; but the amount of the liability or cost of handling out was not definite or fixed.

The case of Osterloh v. Lucas, Commissioner, 9 Cir., 37 F.2d 277, 278, is cited in support of the contention that the requirements of § 41 of the Internal Revenue Code, namely, that "the net income shall be computed upon the basis of the taxpayer's annual accounting period, in accordance with the method of accounting regularly employed in keeping the books of such taxpayer", are satisfied if "the books * * * be kept fairly and honestly." The opinion in the cited case adds, however, "and when so kept they reflect the true income of the taxpayer within the meaning of the law"; and the court affirmed the decision of the Board of Tax Appeals, saying that the method of bookkeeping employed by the taxpayer was not "permissible" in that it did not reflect the true income.

 The petitioner contends further that the decision of the Tax Court in the present case is inconsistent with its former decision in Towers Warehouses, Inc., v. Commissioner, 8 T.C. 1363. Assuming without deciding that there is an inconsistency in the two decisions, the former is not controlling here in as much as the parties are different and the issues are for different tax years. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715; Louisville Property Co. v. Commissioner, 6 Cir., 140 F.2d 547, certiorari denied, 322 U.S. 755, 64 S. Ct. 1268, 88 L.Ed. 1584.

For the reasons stated the decision of the Tax Court is affirmed.