**BAYSHORE GARDENS, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 297, Docket 25502.**

United States Court of Appeals Second Circuit.

Argued May 8, 1959.

Decided May 29, 1959.

Samuel Byer, New York City, for petitioner.

Meyer Rothwacks, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Melva Graney, Dept. of Justice, Washington, D. C., on the brief), for respondent.

Arthur L. Harrow, New York City, for amicus curiae.

Before CLARK, Chief Judge, WATERMAN, Circuit Judge, and EDELSTEIN, District Judge.

EDELSTEIN, District Judge.

Petitioner, a New York corporation organized to construct and operate a multiple-dwelling apartment house, sought financing for its project from a Brooklyn savings bank. Utilizing the services of a broker, the corporation was successful in arranging a $1,335,600 F.H.A. insured mortgage loan, secured by a 32-year 7-month mortgage note. The note form of credit instrument was employed in place of the usual form of corporate bond in order to avoid the purchase of United States documentary tax stamps, necessary for a bond, but, by a ruling of the Commissioner, unnecessary for the note. Because of the prevailing market price for mortgage money and because of the fact that at the time savings institutions were paying premiums to obtain this type of F.H.A. loan, among other reasons, the bank agreed to pay a 3¾ percent premium, or $50,085 in excess of the face amount of the loan. Of this sum the petitioner received $43,-407 (the remainder being paid by the bank directly to the broker [1]) in the taxable year 1950. The petitioner, who kept its books and reported its income on an accrual, calendar year basis, claimed the right to amortize the premium over the 32-year 7-month term of the mortgage note. The Tax Court decided against the petitioner, concluding that there was no provision of the Internal Revenue Code (of 1939) and no pertinent regulation of the Commissioner which would authorize a corporate taxpayer to amortize a premium received by it upon the execution of its mortgage note, as distinguished from its corporate bond. The taxpayer has brought a petition for a review of this decision.

The taxpayer relies on Sections 41 and 42 of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 41, 42, arguing that inasmuch as it keeps its books and reports its income on the accrual basis, an approved, standard method of accounting, the amortization of premium income over the life of the obligation clearly reflects its income. Obviously the purpose of cited sections was to achieve an accounting method that accurately reflected the taxpayer's income on an annual accounting basis.[2] Section 41 required net income

---

1. The Commissioner has made no contention that the entire amount of the premium is taxable to the taxpayer, even though that part not actually received by taxpayer was paid by the bank to the broker in satisfaction of an obligation owed by the taxpayer.

2. Cf. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; United States v. Mitchell, 271 U.S. 9, 12, 46 S. Ct. 418, 70 L.Ed. 799.

to "be computed upon the basis of the taxpayer's annual accounting period \* \* \* in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but \* \* \* if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income \* \* \* " Under section 42, "[t]he amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period \* \* \* " The Commissioner has in effect determined that the amortization of the mortgage note premium by the accrual basis taxpayer is a method of accounting that does not clearly reflect income. This review calls into issue the validity of the Commissioner's exercise of discretion. See Automobile Club of Michigan v. Commissioner of Internal Revenue, 353 U.S. 180, 189–190, 77 S.Ct. 707, 1 L.Ed.2d 746.

The theory underlying the amortization of premiums (or discounts) on long term obligations is as simple as it is familiar. It is a method of adjusting the nominal to the actual cost of money. A premium is spread over the term of the obligation so that during each year of the term an apportionate amount of premium goes to decrease the nominal interest to the actual cost of money. A discount is similarly spread so that each year the borrower makes up an apportionate part of the discount, revealing an actual rate of interest in excess of the nominal rate. Citation is scarcely necessary to demonstrate the classic applicability of this theory to corporate bonds. Helvering v. Union Pacific Co., 293 U.S. 282, 286, 55 S.Ct. 165, 79 L.Ed. 363; San Joaquin Light & Power Corporation v. McLaughlin, 9 Cir., 65 F.2d 677, 679. It is a venerable doctrine relating to income taxation of the corpo-

rate seller of bonds. Section 29.22(a)–17(2)(a) of Treasury Regulations 111 (1939 Code) provides that where bonds are issued by a corporation at a premium, the net amount of the premium is income which should be prorated or amortized over the life of the bonds. See also Regulations 118 of the 1939 Code, Sec. 39.22(a)–17. Similar provisions have been in effect under all of the revenue acts since the Revenue Act of 1918. And there is no dispute that had the corporate obligation in issue been a bond, amortization would have been permissible as clearly reflecting income.

The Commissioner does not, indeed, directly attack the petitioner's accounting as not clearly reflecting income. His argument is that because the taxpayer received the amount in question under a claim of right and without a restriction as to its disposition, it was income reportable when received, under the rule of North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560; Healy v. Commissioner, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007. Moreover, Section 29.22(a)–17(2)(a) of Regulation 111 carves out an exception to the general rule that income items received in a given year under a claim of right and without restrictions as to disposition are reportable in the year of receipt; and the corporate obligation in issue, being a note, does not come within the terms of the exception explicitly specifying bonds. But this argument proves too much. It would seem to prove that the issuer of a corporate bond who receives a premium under a "claim of right" need not report the entire premium as income in the year of receipt merely because that is the pleasure of the Commissioner. The obvious point is that the regulation is not exceptional. It is nothing more than a statement of the rule that the amortization of a corporate mortgage bond premium is the clear and accurate method of reflecting annual income. Chicago & North Western Railway Co.,

22 B.T.A. 1407, reversed on another point, 7 Cir., 66 F.2d 61, certiorari denied Burnet v. Chicago & North Western Ry. Co., 290 U.S. 672, 54 S.Ct. 90, 78 L.Ed. 580; Fall River Electric Light Co., 23 B.T.A. 168; Nashville, Chattanooga & St. Louis Ry., 24 B.T.A. 856. To apply the "claim of right" doctrine to the point urged by the Commissioner would nullify his own bond premium amortization regulation.[3]

Thus the Commissioner is constrained to press his position on the basis of the distinction between a bond and a mortgage note.[4] How the distinction bears on the problem of the clear reflection of annual income in the taxpayer's books is unexplained by the Commissioner and unperceived by the Court. Time is the crucial element that determines premium or discount, and that justifies amortization.[5] Where there is, as in this case, a long-term indebtedness of fixed amount and date of maturity, and with a fixed interest rate, the problem of allocating an annual aliquot share of premium is one of precise mathematical resolution, leaving nothing to discretion or imagination, and reflecting annual income as clearly and as accurately as counting ap-

3. On the question of the receipt by an accrual basis taxpayer of prepayment for services to be rendered in future, as related to "claim of right," cf. Beacon Publishing Co. v. Commissioner, 10 Cir., 218 F.2d 697, 699, and Schuessler v. Commissioner, 5 Cir., 230 F.2d 722. These were cases in which taxpayers were able to estimate with reasonable accuracy expenses in subsequent years which were attributable to the current year's income, so that they were allowed to defer prepaid receipts, reporting them ratably over the life of the prepayment period. See Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 189, 77 S.Ct. 707, 1 L.Ed.2d 746, note 20, distinguishing these cases. They would appear to go beyond what is required to sustain the amortization in the case of a mortgage note premium, where the future interest expenses are exactly ascertainable, by way of an adjustment of nominal to real interest. The point made by the Commissioner, on the basis of the Automobile Club case, that the pro rata allocation of premium bears only an artificial relation to the performance of any service by the taxpayer to the bank, is itself scarcely realistic. The amortization serves the very real purpose of reflecting actual interest charges, relating significantly to the taxpayer's performance of its obligation to make interest payments to the bank.

4. Among the "material differences" suggested between the mortgage note issued in this case and bonds customarily issued in connection with corporate financing are: that corporate bonds are generally issued in either registered form or with coupons attached, whereas the note had neither characteristic; that corpo-

rate bonds typically bear interest payable periodically but the principal amount is not payable prior to a fixed maturity date, while the mortgage note was payable in 391 monthly installments of both interest and principal; that the interest rate of a corporate bond is fixed by the issuing corporations, while the interest rate on the mortgage note was fixed by legislation; that a typical corporate bond is usually one of a series, while the mortgage note was a single instrument; that corporate bonds are normally issued in relatively small denominations in order to facilitate public sale on the open market, while the taxpayer's note was in excess of a million dollars; that corporate bonds are subject to a federal documentary stamp tax, while taxpayer's note was not.

5. "* * * The true income of the company [issuing long term securities] can be reflected only when the discount is spread over the life of the bonds. The most material element in determining the contract rate of interest, that is, whether the bond shall be sold at par or at a premium or discount, is time. Thus no one would consider the proposition that he pay a premium for bonds payable at once nor would one issue bonds at a discount which are due and collectible the day they are issued. Since time is such a vital element in determining premium and discount, it is difficult to perceive why this element should not be taken into consideration in determining taxable income—why time should not be used as a divisor in order to allocate to each period of time that part of the discount which is greater or less by reason of time." Chicago, Rock Island and Pacific Ry. Co., 13 B. T. A. 988, 1031.

ples into baskets. We see nothing in the distinction between a bond and the kind of note here involved to warrant different treatment on the issue of the amortization of premiums for income tax purposes.[6]

The Tax Court in its opinion itself suggested that there was no fundamental distinction between the amortization of premiums received on corporate bonds and mortgage notes. The distinction drawn was one of terminology.[7] But it was in a term of the regulation—the reference to "bonds" only—without a demonstration of statutory basis. Indeed, that Court speculated that the rarity of premiums received upon the execution of mortgage notes before the advent of F.H.A. insured mortgages perhaps accounted for the absence of some statutory provision or regulation granting mortgage note premiums the same treatment as corporate bond premiums. But we find statutory authority for the amortization of the mortgage note premium, an interpretation not precluded but supported by the regulation on corporate bonds.

The respondent argues as a separate ground for affirming the Tax Court's decision that the premium may properly be considered a broker's commission or finder's fee (assigned by the broker to petitioner), or as compensation paid by the bank to the taxpayer for services rendered by the taxpayer's employees and agents in obtaining approval for the loan. But we are satisfied that there is no basis for disturbing the Tax Court's finding that the amount in controversy constituted a premium as that word is commonly understood.

The decision of the Tax Court is reversed.

---

**6.** The fact that the petitioner itself chose the note instead of the bond form of instrument, on the basis of a ruling that no federal documentary stamp tax attached to the former, does not add any substance to the distinction for income tax purposes.

**7.** It is interesting to note that § 171(d) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 171(d), relating to the deduction of amortizable bond premiums, now includes notes freely in the bond definition. Compare with § 125(d) of the 1939 Code, 26 U.S.C.A. § 125(d) from which the Tax Court reasoned.