MARK E. SCHLUDE AND MARZALIE SCHLUDE, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62109, 69591–69593.   Filed September 28, 1959.

*Carl F. Bauersfeld, Esq.*, and *Einar Viren, Esq.*, for the petitioners.
*William E. McCormick, Esq.*, for the respondent.

---

[1] The following proceedings are consolidated herewith: Mark E. Schlude, Docket No. 69591; Marzalie Schlude, Docket No. 69592; and Mark E. Schlude and Marzalie Schlude, Docket No. 69593.

OPINION.

BLACK, *Judge:* The petitioners are equal partners in the Studio, a partnership which owns and operates five Arthur Murray Dance Studios under franchise agreements with Arthur Murray, Inc. In dispute is the amount of the Studio's gross income. Specifically, the dispute relates to the manner in which the receipts from contracts for dancing lessons are to be reported.

The problem may best be explained by the following illustration: On August 1, 1952, the Studio enters into a contract with a student whereby the Studio agrees to teach the student 24 1-hour dancing lessons and the student agrees to pay $240 therefor, $100 down and $20 per month for the next 7 months. (In some cases the student gives a negotiable note for the installment payments.) Lessons are arranged from time to time and at the end of 1952 the Studio has given the student 10 lessons and the student has paid $180, the $100

down and 4 $20 installments. By March 1953, the Studio gives the student 10 additional lessons and the student pays $40, 2 more installments. The student loses interest in the course and does not take the remaining 4 lessons and the Studio is unable to collect the remaining $20.

In 1952 the Studio, which reports on an accrual basis, returns as gross income $100, representing 10 lessons taught at $10 per lesson. During 1953 the Studio returns as gross income $100 representing 10 lessons taught at $10 per lesson. After the contract has been inactive for a year the Studio cancels it, computing a gain or loss thereon. Here the gain would be $20. (Four lessons untaught at $10 per lesson equals $40, less contract price unpaid of $20 equals $20 gain.) This $20 gain on cancellation would be returned as gross income in 1954.

The Commissioner determined that the entire $240, the contract price, should be returned in 1952 when the contract was entered into and the amount of the contract was paid or agreed to be paid. We agree.

The Studio, being on an accrual basis, must return items of gross income in the year in which they accrued. Sec. 42 (1939 Code). "Items must be accrued as income when the events occur to fix the amount due and determine liability to pay." *Spring City Foundry Co. v. Commissioner*, 292 U.S. 182 (1934). When the contracts were entered into the amounts due thereunder were fixed and the students were "liable to pay." It is true that a payment of a portion of the contract price was deferred but that does not affect the fixed and unconditional right of the Studio to receive the amount. Nor does the fact that the Studio was required to perform future services under the contract alter the Studio's right to receive since the deferred payments were in many cases due prior to the rendering of the services. And the record shows that in most instances substantial payments were received prior to the performance of the services for which the payments were made.

The exception to the rule stated above is where there is a real uncertainty as to whether the taxpayer will ever receive the amount in question, cf. *San Francisco Stevedoring Co.*, 8 T.C. 222. Here, the Studio actually received substantial cash or negotiable notes under each contract. The contracts themselves provided that they were noncancelable and that no refunds should be made. Despite this provision in the contract some contracts were canceled. The facts show that the cancellations were considerable in amount. These amounts, according to the Studio's records, were about 17 per cent, 15 per cent, and 19 per cent of sales for the respective years. Assuming that the rate of cancellation was about 17 per cent of sales that fact still would not provide a sufficient basis for a finding that there was a real un-

certainty that the amounts due under any one or all of the contracts would be uncollectible (and therefore not accruable) at the time the contracts were entered into. The normal manner of providing for this type of contingency is through the use of a bad debt reserve. We have no issue in the instant case as to any addition to a bad debt reserve nor do we have any issue concerning debts of the partnership which became worthless in the taxable year.

It seems to us that the instant case is controlled by our decision in *Curtis R. Andrews*, 23 T.C. 1026, on the first point decided in that case. That first point decided in the *Andrews* case was essentially the same as the main issue we have in the instant case. While it is true that the facts in the *Andrews* case are not precisely the same as the facts in the instant case, nevertheless we do not think that such differences in facts as do exist would justify a holding in the instant case different from what we held in the *Andrews* case. For example, in the *Andrews* case, according to the Findings of Fact, the Arthur Murray Studios in that case did not have any accounts receivable but they did take notes receivable from their dancing students. In the instant case, apparently the Studio had accounts receivable as well as notes receivable. This difference, it seems to us, is not sufficient to make a valid distinction between the *Andrews* case and the instant case. To an accrual taxpayer, accounts receivable must be taken into income just the same as notes receivable. We know of no authority to the contrary. Petitioners, in their brief, argue that their accounts receivable for dancing lessons contracts were not true accounts receivable but were what they term "memorandum accounts receivable." Their argument on this point is, in part, stated in their brief as follows:

The record shows that at the time the contract is executed and the entries made to the deferred income account, the so-called students accounts receivable at that time are not true, earned receivables. True accounts receivable are entered after a product has been delivered or services have been rendered. * * *

In other cases before our Court we have not made the distinction in accounts receivable which petitioners seek to draw. See *Your Health Club, Inc.*, 4 T.C. 385, which we will discuss more at length later.

Another difference in the facts in the *Andrews* case from those present in the instant case is that in the *Andrews* case when the Arthur Murray Studio partnership transferred the notes which it took from its students to the bank, the bank paid the studio partnership the full face amount of the notes, less a 6 per cent discount. In the instant case, when the Studio partnership transferred the student notes to the bank, it did not receive from the bank the full face amount of the notes. The bank held back 50 per cent of the face amount of the notes and set up a reserve account of the amounts withheld which the partnership could not use until after the note was paid

in full by the student. This fact, however, does not preclude the accrual as income of the full amount of the note when it is received from the student. Cf. *Commissioner* v. *Hansen*, 360 U.S. 446 (1959). These were the so-called "Dealers' Reserve Accounts" cases. In the *Hansen* case the Supreme Court held that the transactions involved were sales of installment paper and the amount of the purchase price retained and recorded as a liability to each dealer accrued as income to him, even though he could not presently recover it, since he had a fixed right to such sum whether it was applied, as he had authorized, to payment of his obligation as guarantor or endorser of the installment paper, or paid to him in cash.

One of the cases relied upon by us in *Curtis R. Andrews, supra*, was *Your Health Club, Inc., supra*. In the latter case the taxpayer corporation was engaged in the business of operating a health club. Its activities consisted in furnishing facilities and services for various sport activities, Russian and Turkish baths, massages, ultraviolet ray and solarium treatments. These services and facilities were furnished by the taxpayer under *contracts* entered into with members. The contract membership entitled members to avail themselves of taxpayer's facilities for a period of 1 year; once, twice, or three times a week according to the type of contract selected by the member. The taxpayer kept its books and filed its returns on an accrual basis. All contracts entered into were immediately entered upon the books of the taxpayer in full. At the end of the taxable year, in the case of contracts extending beyond the close of the year, the membership fee was allocated in each instance between the expired and unexpired portion of the contract, such allocation being based upon the number of months yet to run under the contract. The amounts allocated to the expired portion of the contracts were carried to gross income for that year and the balance was set up in the form of a "reserve for uncompleted contracts" and excluded from the gross income of the taxable year as "unearned income." Generally, the members paid their membership fees in advance in cash, but not always. For example, during the fiscal year ended March 31, 1940, membership contracts entered into amounted to $48,280.21. Of this amount, $42,800.85 was paid in cash during the year and the balance represented accounts receivable due at the close of the year. The taxpayer filed its income tax returns in accordance with its method of allocation above described. The Commissioner disallowed this method as not correctly reflecting income and determined deficiencies. We upheld the Commissioner. In doing so we said:

The amounts paid in cash were deposited in petitioner's general account and were subject to no restrictions as to use or application. The amounts unpaid but accrued constituted accounts receivable as of the close of the taxable year, and were unqualifiedly due and payable. In these circumstances, all such

amounts received or accrued must be considered income to petitioner in the year received or accrued. [Citing numerous cases not necessary to enumerate here.]

Thus, it will be seen from the foregoing recitals from the *Your Health Club, Inc.,* case that the services which the taxpayer corporation in that case contracted to render its members, some of which lapsed over into the following year, were Russian and Turkish baths, massages, ultraviolet ray treatments, etc. The taxpayer sought, by its method of accounting, to give recognition to this lapse over of services to be rendered into the following year by allocating part of the membership fees provided for in the contract to the following year. This we denied in the *Your Health Club, Inc.,* case for reasons already stated.

While it is, of course, true that the giving of Turkish and Russian baths and massages is somewhat different from giving dancing lessons, we think there is no difference in principle as to how the contract price for the two kinds of services should be treated from an accounting standpoint by one on an accrual basis. The rule which must govern the respective taxpayers, *Your Health Club, Inc.,* and the Studio in the instant case, is as was said in *Your Health Club, Inc.:* "In these circumstances, all such amounts received or accrued must be considered income to petitioner in the year received or accrued."

We think it was quite appropriate for us, in *Curtis R. Andrews, supra,* to cite and rely upon the *Your Health Club, Inc.,* case as one of our supporting authorities for the result reached in that case. We also think it is appropriate to do so here. Cf. *Automobile Club of Michigan* v. *Commissioner,* 353 U.S. 180, affirming 230 F. 2d 585, which affirmed our decision, 20 T.C. 1033. See also *Automobile Club of New York, Inc.,* 32 T.C. 906.

Reviewed by the Court.

> *Decision will be entered for the petitioners in Docket No. 62109.*
>
> *Decisions will be entered for the respondent in Docket Nos. 69591, 69592, and 69593.*

---

PIERCE, *J.,* dissenting:

1. As to those contracts for future services under which the entire contract price had not been prepaid either by cash or notes, and under which certain payments were not due to be made until a subsequent taxable year, I agree with the views expressed by Judge Train in his dissenting opinion. Such contracts were executory as to both parties; and the obligations to make the future payments thereunder had not matured, so as to become true accounts receivable, at the times when

the contracts were executed. In such situation, I think there is no more justification for accruing the future contract payments as income of the year in which the contracts were executed, than there would be for accruing as income at the time a lease is executed, all rental payments contracted to be made in subsequent years under such lease. The fact that a contract for future services, or a lease for future use of property, may be legally enforcible is not in itself justification for accruing as income of the year in which the instrument is executed, all payments to be made thereunder in future years.

2. Even as to those contracts for future services upon which prepayment had been made, I think this Court has erred in refusing to permit the taxpayer to spread the income over the periods in which such income was to be earned, in accordance with sound business accounting practices. On the basis of the authorities and reasons which I have heretofore set forth in my dissenting opinion in the case of *Automobile Club of New York, Inc.*, 32 T.C. 906, I think that such action of the Court not only defeats a true reflection of income, but also is out of harmony with the weight and trend of Courts of Appeals authority.

---

TRAIN, *J.:* I respectfully dissent.

I do not agree that the petitioners should be required to report as income amounts which were not received in the taxable year, either in cash or by notes, and which were not due and payable by the close of the taxable year.

The majority opinion relies heavily on *Curtis R. Andrews*, 23 T.C. 1026 (1955), which applied the so-called claim of right doctrine and prohibited the deferral of amounts received but not earned in the taxable year. The facts of the instant case disclose that a portion of the contract amounts were not paid either in cash or by notes in the taxable year. As to that portion of the "student accounts receivable," the claim of right doctrine can have no applicability and the majority's reliance on the *Andrews* case is misplaced.

Moreover, even though the student's contractual obligation arose at the time of signing, it is clear that the contract amounts did not become due and payable in their entirety in that year. To the extent that these same unpaid amounts were not due and payable in the taxable year, I do not believe that *Your Health Club, Inc.*, 4 T.C. 385 (1944), is authority for their inclusion in income of that year.

I believe that the conclusion reached by the majority does violence to established rules of accounting, whether for business or tax purposes, and results in a distortion of income.

DRENNEN, *J.*, agrees with this dissent.