Mark E. SCHLUDE and Marzalie Schlude, Husband and Wife, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16443.

United States Court of Appeals
Eighth Circuit.

Oct. 19, 1960.

Robert Ash, Washington, D. C., Carl F. Bauersfeld, Washington, D. C., on the brief, for petitioner.

Harry Marselli, Attorney, Department of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, George F. Lynch, Attorneys, Department of Justice, Washington, D. C., on the brief, for respondent.

Before SANBORN, WOODROUGH, and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

The Commissioner of Internal Revenue determined that a deficiency existed in the tax liability of petitioners for the years 1952 to 1954, inclusive, as follows:

| | |
|---|---|
| Mark E. Schlude for 1952 ............. | $ 9,264.69 |
| Marzalie Schlude for 1952 ............ | 8,971.55 |
| Mark E. and Marzalie Schlude for 1953 | 83,395.82 |
| Mark E. and Marzalie Schlude for 1954 | 11,544.32 |

The Tax Court, with three Judges dissenting, affirmed the action of the Commissioner. See 32 T.C. 1271. Pursuant to §§ 1141, 1142 of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 1141, 1142, and §§ 7482, 7483 of the 1954 Code, 26 U.S.C.A. §§ 7482, 7483, petitioners have brought the case to this Court for review.

The facts, established by stipulation of the parties and evidence, are detailed in the findings of the Tax Court. Those essential to a proper understanding of the question presented for our determination are: Petitioners, husband and wife, on June 18, 1946, formed a partnership known as Arthur Murray Dance Studio for the purpose of conducting and operating dance studios authorized by certain franchise agreements entered into with Arthur Murray, Inc., of New York City. The venture was carried into effect and the partnership operated studios in the States of Nebraska, Iowa and South Dakota, for the specific purpose of teaching private ballroom dancing to individual students.

Basically, there were two kinds of contracts entered into between the partnership and students desiring dancing instructions. Under one type, a portion of the total tuition was paid in cash when the contract was executed, and the balance in deferred installments. Under the other, a portion of the down payment was paid in cash at the time the contract was entered into, and the balance of the down payment was to be paid in installments, the remainder of the contract price being evidenced by a negotiable note taken from the student, payable in designated installments in accordance with the terms of the note.

Under the contract the student agreed to take a designated number of hours of dancing lessons and pay therefor the amount specified as tuition. All types of contracts contained a non-cancellable provision and provided that the student should not be relieved of his obligation to pay the tuition agreed upon. The hours of lessons or instructions contracted for ranged from 5 to 1,000 to 1,200. Some of the contracts were for lifetime courses which meant that, over and above 1,200 specified hours, the student was entitled to 2 hours of lessons per month plus two parties a year for life. By explicit terms, the studio was required to give the number of hours of instruction agreed upon. The contracts, however, did not schedule the dates when the studio was required to give and the student was to receive instructions, this detail being arranged and agreed upon from time to time as lessons were given. Under many of the contracts, lessons extended beyond the fiscal year in which the contract had its inception.

Notes taken from students were transferred with full recourse, to a local bank, which at the time of acquiring a note, would deduct therefrom the interest charges, and give approximately 50% of the balance of the note to petitioners. Installment payments on the remainder of the note were held by the bank in a reserve account, but this reserve was not available to petitioners until the note was paid in full by the student, after which the reserve was transferred to the partnership's general bank account.

A sizeable number of contracts was cancelled annually, the non-cancellable provision to the contrary notwithstanding. In its opinion, the Tax Court con-

ceded that "cancellations were considerable in amount", noting that records of the partnership disclosed that cancellations for the respective years involved were 17%, 15%, and 19% of sales for the respective years.[1]

A complete double entry bookkeeping system was installed for the partnership by a certified public accounting firm at the time that the partnership was organized, and an accrual system of accounting was employed, with the fiscal year ending March 31. This accounting system was used continually and consistently from the time the partnership was formed. Additionally, individual student record cards were maintained, listing all pertinent information such as name and address of student, type of contract, hours involved, total contract price, history of lessons taught, and payments made under the contract.

Since the method pursued by the partnership with respect to its operations under its accrual system of accounting and the effect thereof from an income tax standpoint are fully and correctly shown in the findings of the Tax Court, we shall forego a repetitious analysis of the manner in which the student transactions were processed insofar as they bear upon the tax question. It is sufficient to say that when a contract was entered into with a student, the "deferred income" account was credited with the total contract price. At the close of each fiscal year, the student record cards were analyzed and determination was made of the number of hours of lessons taught which, multiplied by the rate per hour of each contract, gave the amount of income earned. This amount was then charged to "deferred income" and credited to "earned income." Earned income thus arrived at was reported as income on the partnership's tax return. If there was any gain resulting from cancellation

of a contract, this amount was also considered as taxable income and reported as such. Detailed schedules which correctly and precisely reflect the result of the partnership's accrual system of accounting during the years in question appear in the findings of fact of the Tax Court.

The deficiencies under consideration resulted from the Commissioner increasing the ordinary *net* income of the partnership for the fiscal years ending March 31, 1952, 1953 and 1954, by the amount of the increases in the deferred income account in those years, as follows: $24,602.22 in 1952, $104,798.41 in 1953, and $12,797.97 in 1954. This determination was made and upheld by the Tax Court through application of the "claim of right doctrine," meaning that, for income tax purposes, the full amount of its contract price had to be returned as income in the year in which the contract was entered into, irrespective of any obligation on the part of the partnership to render services under the contract in years subsequent to the year in which the agreement was made.

This case once more brings into sharp focus the question of when income shall be taken into account for tax purposes.[2] Section 41 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 41, is the starting point in determining petitioners' "income" for purposes of the internal revenue laws. It directs that net income shall be *computed* on the basis of taxpayer's annual accounting period, "in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but * * * if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." Section 42 of the 1939 Code, 26 U.S.C.A. § 42, sets

1. 32 T.C. at page 1279. Petitioners insist that the Tax Court's percentages of cancellations are inaccurate; that sales in the amount of approximately 28.4%, 19.1% and 25.2% were cancelled in the fiscal years 1952, 1953 and 1954.

2. Mertens *Law of Federal Income Taxation* [Zimet & Stanley Rev.] states, Vol. 2, § 12.01: "The fundamental questions of *when* items become income and *when* items are deductible, despite years of extensive litigation, are still troublesome today."

out the *period* in which items of gross income shall be recognized. It provides:

"The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, *unless*, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period." (Emphasis supplied.)

Regulations issued by the Commissioner reiterate the principle that the accounting methods and computations thereunder are to be made in a manner which will clearly reflect the taxpayer's income.[3]

As permitted by § 41, the practice of accrual accounting has long been recognized for the purpose of tax accounting. See United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, and § 446 (c) Internal Revenue Code of 1954, 26 U.S.C.A. § 446(c). Generally, under such a system, it is contemplated that income, earned but not yet received, is to be reported, with the corresponding accrual of expenses incurred but not yet paid. It is not surprising that considerable litigation has arisen as to the proper treatment to be given specific items in specific instances.

One line of cases has dealt with the problem of *when* income accrues, and in this connection, the so-called "claim of right" doctrine first made its appearance, apparently in North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.

Ct. 613, 76 L.Ed. 1197. In that case, it was conceded that net profits earned by property in receivership during 1916 and paid over in 1917 constituted income. After holding that the income could not be said to have accrued during 1916, inasmuch as there was no constructive receipt of monies, nor right in taxpayer to demand the profits, the court further held that the profits were income for 1917, and not income for the year 1922, the year in which litigation was finally terminated, stating at page 424 of 286 U.S., at page 615 of 52 S.Ct.:

"If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

The "claim of right" test has been frequently applied, both from the standpoint of determining receipt of income, and of determining the propriety of deduction of expenses or reserves, and as to taxpayers on an accrual basis as well as to those on a cash basis. See and compare, Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; Guaranty Trust Co. of New York v. Commissioner, 303 U.S. 493, 58 S.Ct. 673, 82 L. Ed. 975; Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 463–468,

---

3. Regulations 118, issued under the 1939 Code provide [see Vol. 2, Mertens Law of Federal Income Taxation, § 12.02, p. 9]: " * * * The time as of which any item of gross income or any deduction is to be accounted for must be determined in the light of the fundamental rule that the computation shall be made in such a manner as clearly reflects the taxpayer's income. If the method of accounting regularly employed by him in keeping his books clearly reflects his income, it is to be followed with respect to the time as of which items of gross income and deductions are to be accounted for. If the taxpayer does not regularly employ a method of accounting which clearly reflects his income, the computation shall be made in such manner as in the opinion of the Commissioner clearly reflects it.
\* \* \* \* \*
"It is recognized that no uniform method of accounting can be prescribed for all taxpayers, and the law contemplates that each taxpayer shall adopt such forms and systems of accounting as are in his judgment best suited to his purpose. Each taxpayer is required by law to make a return of his *true income*. He must, therefore, maintain such accounting records as will enable him to do so." (Emphasis supplied.)

79 S.Ct. 1270, 3 L.Ed.2d 1360; Commissioner of Internal Revenue v. Cleveland Trinidad Paving Co., 6 Cir., 62 F.2d 85. Recently, the Supreme Court, in Healy v. Commissioner, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007, had occasion to apply the test, in holding that cash basis taxpayers are required to report salaries when received although subsequently it was determined excessive salaries had been paid to them. There the Court stated, 345 U.S. at page 281, 73 S.Ct. at page 673:

"Not infrequently, an adverse claimant will contest the right of the recipient to retain money or property, either in the year of receipt or subsequently. In North American Oil v. Burnet, 286 U.S. 417 [52 S. Ct. 613, 76 L.Ed. 1197] (1932), we considered whether such uncertainty would result in an amount otherwise includible in income being deferred as reportable income beyond the annual period in which received. That decision established the claim of right doctrine 'now deeply rooted in the federal tax system.' (United States v. Lewis, 340 U.S. 590, 592 [71 S.Ct. 522, 95 L.Ed. 560])."

A second line of cases has dealt with the problem from the standpoint of the deductibility of anticipated expenses. See and compare, United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; McCauley-Ward Motor Supply Co. v. Commissioner, 10 B.T.A. 394; Capital Warehouse Co. v. Commissioner of Internal Revenue, 8 Cir., 171 F.2d 395; Hilinski v. Commissioner of Internal Revenue, 6 Cir., 237 F.2d 703. From these cases, the rule has evolved that no expense may be accrued and deducted in the absence of a fixed and definite liability for a sum which may be determined with reasonable certainty. Frequently in fixing a strict standard of proof, the courts speak in terms of deductions being a matter of "legislative grace," not a matter of right. See United States v. Olympic Radio & Television, 349 U.S. 232, 235, 75 S.Ct. 733, 99 L.Ed. 1024; Capital Warehouse Co. v. Commissioner of Internal Rev., supra, 171 F.2d at page 397.

There remains yet a third type of situation, typified by that before us—that is, the proper tax treatment of receipts which are in part unearned. It is our view that the concept of "prepaid receipts" requires consideration of factors not present in dealing with concededly "earned income." However, it is apparent from our review of Tax Court decisions, that this distinction has not been made, and that the Commissioner is unyielding in his position, which, broadly stated, is that all payments actually or constructively received by a taxpayer for future services, are taxable in the year of receipt, without regard to taxpayer's accounting system, and regardless of whether such receipts will be retained or offset by expenses in future years. See Curtis R. Andrews v. Commissioner, 23 T.C. 1026, and compare Consolidated Edison Co. of New York v. United States, 2 Cir., 279 F.2d 152, petition for certiorari pending, (pre-payment of tax not yet accrued). On the other hand, it is apparent that taxpayers have frequently found it difficult to obtain the Commissioner's approval of reserves set up and designed to offset the expenses of earning such income. See and compare, Capital Warehouse Co. v. Commissioner of Internal Revenue, supra, 171 F.2d 395; Hilinski v. Commissioner of Internal Revenue, supra, 237 F.2d at page 704.[4] It is our view that the decision in the case before us does not turn solely on the question of whether petitioners had the right to receive or to keep the amounts of tuition designated in the contracts for lessons.[5] The real question is whether petitioners'

---

4. "It is not reasonable under these circumstances to compel the petitioners to accrue income and at the same time refuse to allow them to accrue the liability incurred in the production of that same income."

5. Petitioners have argued with some persuasion that the "claim of right" doctrine

system of accounting reflected their true income. The Tax Court made no finding that it did not. The effect of the Commissioner's adherence to and application of the claim of right test here is to place petitioners on a cash basis as to income, irrespective of the fact that their books are kept on an accrual basis. It must be remembered that accrual accounting has been approved for the purpose of tax accounting. In the oft-cited case of United States v. Anderson, supra, the Supreme Court discussed the purpose of §§ 12(a) and 13(d) of the Revenue Act of 1916 (provisions similar to §§ 41, 42) in this language at page 440 of 269 U.S., at page 134 of 46 S.Ct.:

"It was to enable taxpayers to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period; and indeed, to require the tax return to be made on that basis, if the taxpayer failed or was unable to make the return on a strict receipts and disbursements basis."

See also United States v. Mitchell, 271 U.S. 9, 12, 13, 46 S.Ct. 418, 70 L.Ed. 799; Healy v. Commissioner, 345 U.S. 278, 281, 73 S.Ct. 671, 97 L.Ed. 1007; Hilinski v. Commissioner of Internal Revenue, supra, 237 F.2d at page 704; and Beacon Publishing Co. v. Commissioner of Internal Revenue, 10 Cir., 218 F.2d 697, 699, where this pertinent statement appears: "The obvious purpose of these provisions (appearing in §§ 41 and 42) is to obtain from the taxpayer a return reflecting its true income and to treat income received and deductible disbursements consistently. United States v. Mitchell, 271 U.S. 9, 12, 46 S.Ct. 418, 70 L.Ed. 799." [6]

In Beacon Publishing Co. v. Commissioner of Internal Revenue, supra; Bayshore Gardens, Inc. v. Commissioner of Internal Revenue, 2 Cir., 267 F.2d 55, and Bressner Radio, Inc., v. Commissioner of Internal Revenue, 2 Cir., 267 F.2d 520, the courts effectuated the purpose of these provisions and reversed the Tax Court on the identical position here advanced, the holding being that it was proper under the accrual method of accounting to defer prepaid receipts. The courts have also recognized a corollary to the foregoing rule, that is, when the accrual method of accounting is employed, it is proper under appropriate circumstances to set up a reserve in the year of receipt to meet the expenses attributable to the income. See Pacific Grape Products Co. v. Commissioner of Internal Revenue, 9 Cir., 219 F.2d 862; Schuessler v. Commissioner of Internal Revenue, 5 Cir., 230 F.2d 722; Harrold v. Commissioner of Internal Revenue, 4 Cir., 192 F.2d 1002; Hilinski v. Commissioner of Internal Revenue, 6 Cir., 237 F.2d 703; Denise Coal Co. v. Commissioner, 3 Cir., 271 F.2d 930. However, where there is a mere contingent liability to make refunds in the following year or doubt as to actual services to be performed, reserves may not be deducted. Brown v. Helvering, supra, 291 U.S. at pages 199–202, 54 S.Ct. at pages 359–360; Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 284, 64 S.Ct. 596, 88 L.Ed. 725; Whitaker's Estate v. Commissioner of Internal Revenue, 5 Cir., 259 F.2d 379, at pages 382, 384, and cf. Capital Warehouse Co. v. Commis-

---

will not extend to portions of the installment contracts not due or payable until a later year. Furthermore, as noted, the Tax Court found that petitioners' past experience indicated that a large portion of the sales would be cancelled. As to ownership of the reserves held by the bank, see and compare Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360. Because of our disposition of the case, it is not necessary to decide these issues.

6. It is significant that the language of § 41 is directed to *net* income, which necessarily contemplates the matching of receipts and expenses.

sioner of Internal Revenue, 8 Cir., 171 F.2d 395.[7]

Many of the decisions relied upon by the Commissioner concerned fully executed contracts and concededly earned income. This factor has been treated to considerable discussion by many courts in arriving at their conclusions. See Doyle v. Commissioner of Internal Revenue, 2 Cir., 110 F.2d 157, 130 A.L.R. 989, certiorari denied 311 U.S. 658, 61 S.Ct. 13, 85 L.Ed. 422; Denise Coal Co. v. Commissioner of Internal Revenue, 3 Cir., 271 F.2d 930; Baird v. Commissioner of Internal Revenue, 7 Cir., 256 F.2d 918, 924, affirmed Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360; Universal Oil Products Co. v. Campbell, 7 Cir., 181 F. 2d 451, 469, 472, certiorari denied 340 U.S. 850, 71 S.Ct. 78, 95 L.Ed. 623 (pointing out that an agreement for services had been fully performed); and Whitaker's Estate v. Commissioner of Internal Revenue, 5 Cir., 259 F.2d 379, 384.

On the facts we have a case closely analogous to Beacon Publishing Co. v. Commissioner of Internal Revenue, supra; Bressner Radio, Inc. v. Commissioner of Internal Revenue, supra, and Bayshore Gardens, Inc. v. Commissioner of Internal Revenue, supra, and on principle one that is identical with those cases. In Bressner, the Second Circuit, in a well reasoned, sound and exhaustive opinion, deals with all facets of the question. In our view, it is not only apposite but persuasive.

Even assuming arguendo that petitioners received cash payment in full at the time of contracting, the *receipt* of the funds could not be considered to be *earned* until petitioners had discharged their liabilities under the contract. Under their method of accounting, established when the partnership was formed and continually employed thereafter,[8] petitioners reported as income in their tax returns such portion of the total amount received, as under their system of accounting had been earned, deferring the remainder of the amount received for inclusion in the year or years in which the remainder of their liability was discharged. Such system seems eminently designed to reflect true income.

Manifestly, Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746, the only case in which the Supreme Court considered on the merits the question of the propriety of deferring prepaid funds, is distinguishable and therefore not controlling. Although the Tax Court in that case applied the claim of right doctrine to disallow the deferral of unearned receipts, 20 T.C. 1033, affirmed sub nom. Automobile Club of Michigan v. Commissioner of Internal Revenue, 6 Cir., 230 F.2d 585, 591, this question was not reached, for the Supreme Court delineated the issues and based its decision on the narrow ground that the *particular method* of deferral employed by the Club was unsatisfactory. The Court found that "(t)he pro rata allocation of membership dues in monthly amounts is purely artificial and bears no relation to the

---

7. In Schuessler v. Commissioner of Internal Revenue, supra, the Court in discussing deductibility of anticipated expenses observed, 230 F.2d at page 724:

"The decisions of the Tax Court and of the several Courts of Appeals are not uniform on this subject, some circuits requiring a mathematical certainty as to the exact amount of the future expenditures that cannot be satisfied in the usual case. Other circuits, seemingly more concerned with the underlying principle of charging to each year's income reasonably ascertainable future expenses necessary to earn or retain the income, have permitted the accrual of restricted

items of future expenses. Two of this latter category are Harrold v. Commissioner and Pacific Grape Products Co. v. Commissioner."

8. This is not a situation where taxpayers are attempting to change their method of accounting. See Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Beacon Publishing Co. v. Commissioner of Internal Revenue, supra, 218 F.2d at pages 701–702. Three qualified experts testified that the system here employed *did* reflect true income and in fact was the only method which would do so.

services which petitioner may in fact be called upon to render for the member." 353 U.S. at page 189, 77 S.Ct. at page 712. The Court distinguished Beacon Publishing Co. v. Commissioner of Internal Revenue, supra, and Schuessler v. Commissioner of Internal Revenue, supra, on their facts, expressing no opinion upon the correctness of these decisions.

The facts before us are distinguishable. Here, petitioners' obligation to provide services subsequent to the tax year was fixed, definite and certain, thereby effectively rebutting any contention that petitioners' method of deferral was purely artificial. The system and method of accounting on an accrual basis with the deferral of income so that it could be closely matched to the corresponding expenses, was designed to clearly reflect petitioners' true income within the meaning of the applicable statutes and regulations. As pointed out in the Beacon and Schuessler cases, any other method would result in a distortion of true income. Compare, Waldheim Realty & Inv. Co. v. Commissioner of Internal Revenue, 8 Cir., 245 F.2d 823, ruling that a *cash* basis taxpayer was entitled to deduct *prepaid expenses* of insurance premiums in the year paid against the Commissioner's contention that the cost thereof must be pro-rated over the term of the policy. This court observed, at page 828, "To require the taxpayer to treat its insurance payments upon an accrual basis would, as the Supreme Court states in Security Flour Mills Co., supra, create 'a divided and inconsistent method of accounting not properly to be denominated either a cash or an accrual system.' "

Neither do we regard Capital Warehouse Co. v. Commissioner of Internal Revenue, supra, as apposite, certainly not controlling. In that case the crucial question was whether the taxpayer could, for the tax year involved, exclude from its gross income that portion thereof which it had set aside on its books as a reserve fund to cover a contractual liability. As we understand the opinion, the taxpayer was denied the deduction because the amount which it had set up in the reserve account was not fixed and certain.

It is our view that the recent decision of the Seventh Circuit in Streight Radio & Television, Inc. v. Commissioner, 280 F.2d 883, decided July 28, 1960, and affirming the Tax Court, is analogous to the Automobile Club of Michigan holding, being based upon a finding that taxpayer's system of deferring income attributable to future services was arbitrary and without proper foundation. In referring to the decision of the Tax Court in the Streight case, 33 T.C. ——, we observe that that court found that the taxpayer had "failed to prove that the method of deferral used bore any significant relation to the services to be performed."

Even indulging the assumption that petitioners came into possession of the monetary amount of the contracts when executed within the contemplation of the claim of right doctrine, we are satisfied that to apply the doctrine to petitioners' operation, without regard to its accrual system of accounting, would result in emasculation of the law long recognized, which affords taxpayers the right "to keep their books and make their returns according to scientific accounting principles, by charging against income earned during the taxable period, the expenses incurred in and properly attributable to the process of earning income during that period." United States v. Anderson, supra, 269 U.S. at page 440, 46 S.Ct. at page 134.

On this record we must hold that there is no showing that the method of accounting employed by taxpayers did not clearly reflect income, and consequently there is no basis for the Commissioner to adopt a method of his own. Accordingly, the decision of the Tax Court is

Reversed.

WOODROUGH, Circuit Judge (dissenting).

This Court twelve years ago considered the question that is the crux of the

presently involved controversy in the case of Capital Warehouse Co., Inc. v. Commissioner of Internal Revenue, 8 Cir., 1948, 171 F.2d 395.

In that case the taxpayer sought to exclude from its gross income that portion thereof which it had set aside on its books as a reserve to cover its contractual liabilities to its customers to remove merchandise from its warehouse at the end of its storage period. The Tax Court, 9 T.C. 966, held that the Commissioner rightfully refused to uphold the exclusion. We affirmed the decision of the Tax Court. Although other Courts of Appeals have since reached contrary conclusions, I would adhere to our former decision and affirm the Tax Court in this case.