E. George Schaefer and Virginia P. Schaefer v. Commissioner.
Schaefer v. Commissioner
Docket No. 69890.
United States Tax Court
T.C. Memo 1959-229; 1959 Tax Ct. Memo LEXIS 35; 18 T.C.M. (CCH) 1110; T.C.M. (RIA) 59229; November 9, 1959
*35 Prior to 1954 petitioner E. George Schaefer, the publisher of a weekly investment newsletter, kept his books and filed his income tax returns on the cash basis; prepaid subscription income was included in net income in the year received. On his returns for the taxable years 1954 and 1955 petitioner deferred including prepaid subscriptions in net income. Held, respondent correctly determined that the prepaid subscriptions constituted taxable income in the years of receipt. George M. Mott, Esq., 901 Hume Mansur Building, Indianapolis, Ind., for the petitioners. Robert E. Johnson, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioners' income *36 taxes for the taxable years 1954 and 1955 in the amounts of $9,153.92 and $20,100.55, respectively. The only question is whether certain prepaid subscription income should have been included in taxable income in the years received. Another issue concerning business expenses was abandoned. Findings of Fact Some of the facts are stipulated, the stipulation being incorporated herein by this reference. Petitioners are husband and wife, residing in Indianapolis, Indiana. They filed joint Federal income tax returns for the taxable years 1954 and 1955 with the director of internal revenue at Indianapolis, Indiana. For convenience, E. George Schaefer will hereinafter be referred to as petitioner. On April 26, 1948, petitioner filed an application with the United States Securities and Exchange Commission for registration as an investment adviser. In his application he stated that he planned to issue a weekly letter explaining the Dow theory. His registration with the Securities and Exchange Commission as an investment adviser became effective May 26, 1948. Petitioner began publishing "The Dow Theory Trader," a weekly investment newsletter, in 1948. He accepted advance payments *37 for subscriptions, using a subscription blank which contained the following statement: "Pro-rata money-back guarantee any time subscriber wishes to cancel, for any reason whatever." On September 29, 1952, the Pennsylvania Securities Commission issued a cease and desist order, notifying petitioner that he was not registered under the Pennsylvania Securities Act and that consequently he was prohibited from carrying on his investment advisory business in Pennsylvania. On approximately January 6, 1953, petitioner filed with the Pennsylvania Securities Commission an application for registration as an investment adviser. This application was followed by a statement of petitioner's financial condition as of January 5, 1953. By letter dated January 19, 1953, the Secretary of the Pennsylvania Securities Commission advised petitioner's attorney that the financial statement which had been supplied did not disclose any information as to subscriptions paid in advance and for which literature had not yet been furnished. Petitioner replied, by affidavit, that he had 69 subscribers residing in the State of Pennsylvania, and that these subscriptions had expiration dates ranging from February 3, 1953, to *38 January 24, 1954. On February 2, 1953, the Secretary of the Pennsylvania Securities Commission wrote petitioner's attorney, as follows: "In the last part of our letter of January 19th we asked for information concerning the total amount which has been paid in advance for subscriptions to literature which has not as yet been issued. In the financial statement as of January 5, 1953 no provision was made for any such sum. You are, therefore, requested to forward an amended financial statement in which the total of advanced payments are clearly set forth." On April 10, 1953, petitioner submitted a revised statement of his financial condition as of January 5, 1953. This revised statement reflected the amount of advance payments for subscriptions to literature which had not been issued as of that date. In a transmittal letter petitioner's attorney called attention to $15,000 of additional life insurance placed in effect to secure the potential liability arising from the advance payments. The revised financial statement appears below: ASSETS
CURRENT ASSETS: Cash in bank, Fletcher
Trust Co., Indianapo-
lis, Indiana
$ 2,037.49
Paper and other sup-
plies
574.76
$ 2,612.25
OTHER ASSETS: Mailing lists (approxi-
mately 95,000 names)
3.00
Cash surrender value,
life insurance - face
value $22,000.00 -
pledged as security
for bank loan - see
note
4,173.64
4,176.64
EQUIPMENT AND
PROPERTY: Office equipment
1,710.00
Real estate - located at
3636 Salem St., Indian-
apolis, Indiana
11,000.00
Personal prop-
erty: House fur-
nishings $1,500.00
Automobile 2,000.00
3,500.00
16,210.00
INVESTMENTS: Brokerage account, Thomson and
McKinnon - at market value
1,450.00
$24,448.89
LIABILITIES AND NET WORTH
CURRENT LIABILITIES: F.I.C.A. and federal
income taxes withheld
$ 163.84
Margin account payable
- Thomson and Mc-
Kinnon
354.32
Unearned income - sub-
scriptions
11,290.89
$11,809.05
OTHER LIABILITIES: Mortgage payable - on
3636 Salem St. prop-
erty
5,419.70
Automobile loan - se-
cured by 1951 Nash
1,264.80
OTHER LIABILITIES: -
Cont'd
Bank loan - secured by
cash value of life in-
surance on life of
E. George Schaefer
$ 2,950.00
$ 9,634.50
$21,443.55
E. GEORGE SCHAEFER - NET
WORTH
3,005.34
$24,448.89
*39 On April 17, 1953, the Pennsylvania Securities Commission issued a certificate evidencing petitioner's registration as an investment adviser. No formal hearings were held before the Pennsylvania Securities Commission in connection with petitioner's application and certification. "The Dow Theory Trader" had good public acceptance and its subscription list increased approximately threefold from 1953 to 1955. Prior to 1954 petitioner kept his books and filed his returns on the basis of cash receipts and disbursements; prepaid subscription income was included in net income in the year received. On his returns for the taxable years 1954 and 1955 petitioner deducted from gross receipts the respective amounts of $25,016.95 and $57,799.81 under the designation "Unexpired Subscriptions." On his return for the taxable year 1955 he added to income under the designation "Unexpired Subscriptions from Prior Year" the sum of $25,216.55. Respondent's administrative file contains no record of an application by petitioner to change his method of accounting and no such application is attached to his returns for either 1954 or 1955. Respondent determined that the prepaid subscriptions constituted *40 taxable income in the year of receipt. Opinion VAN FOSSAN, Judge: The question is whether prepaid subscription income, received by petitioner during the taxable years 1954 and 1955, should have been included in taxable income in the year received. Prior to the taxable years here involved petitioner kept his books and filed his returns on the cash receipts and disbursements method. Prepaid subscriptions were included in net income in the year received. On his returns for the taxable years 1954 and 1955 petitioner deducted prepaid subscription income from gross receipts. The prepaid subscription income deducted on the 1954 return was added to income on petitioner's return for 1955. Generally, under the cash receipts and disbursements method all items which constitute gross income are to be included in taxable income in the year actually or constructively received. Sec. 1.446-1(c)(1)(i), Income Tax Regs.
Section 446(a) of the Internal Revenue Code of 1954 provides that "Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." The term *41 "method of accounting" includes not only the over-all method of accounting but also the accounting treatment of any item. Sec. 1.446-1(a)(1), Income Tax Regs. Except as otherwise expressly provided, a taxpayer who changes his method of accounting must secure the consent of the Commissioner before computing his income for purposes of taxation under the new method. Sec. 1.446-1(e)(2)(i), Income Tax Regs.
There is no evidence that petitioner requested respondent's permission to change his accounting method for either 1954 or 1955, and petitioner makes no claim that such permission was ever sought. It would thus appear that petitioner, who had previously reported income on the cash basis, including prepaid subscriptions in taxable income when received, should have, in the absence of permission to the contrary and in accord with the cash basis of accounting, continued to include prepaid subscriptions in taxable income when received. Petitioner contends that the method of accounting used should not be a factor in determining the year in which prepaid subscriptions are to be taxed. In support of his contention he cites Beacon Publishing Co. v. Commissioner, 218 F. 2d 697 (1955), *42 reversing 21 T.C. 610 (1954), but when the decision in that case is studied in the light of the facts there present, it is not found to be in conflict with the view that we take in the present case. It is established beyond question that earnings received under a claim of right without restriction as to disposition must be reported, even though it may still be claimed that the taxpayer is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. North American Oil v. Burnet, 286 U.S. 417 (1932); United States v. Lewis, 340 U.S. 590 (1951); Curtis R. Andrews, 23 T.C. 1026 (1955). Petitioner fits precisely within this rule. He received prepaid subscription income in consideration for his promise to furnish the subscriber with a specified number of issues of "The Dow Theory Trader." The money was his to do with as he liked, subject only to the contingency that some subscribers might demand a refund. The prepaid subscriptions should have been included in taxable income when received. The fact that some portion of the money might have to be refunded in a future year does not render *43 the rule inapplicable . Brown v. Helvering, 291 U.S. 193 (1934). We hold that respondent properly included petitioner's prepaid subscriptions in income in the year of receipt. Decision will be entered under Rule 50.