## HEALY ET AL. *v.* COMMISSIONER OF INTERNAL REVENUE.

NO. 76.

Argued December 12, 1952.—Decided April 6, 1953.

*James H. Heffern* argued the cause and filed a brief for petitioners in No. 76.

*Assistant Attorney General Lyon* argued the cause for petitioner in No. 138 and respondent in No. 76. With him on the briefs were *Ellis N. Slack, Lee A. Jackson* and *Melva M. Graney. Solicitor General Cummings* was also on the brief in No. 76. *Robert L. Stern,* then Acting Solicitor General, and *Philip Elman* were also on the brief in No. 138.

*Sol Goodman* argued the cause and filed a brief for respondent in No. 138.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

The income tax liability of three individual taxpayers for a given year is here before the Court. Only a single question, common to all the cases, is involved. The Tax Court held a view favorable to the taxpayers.[1] The Commissioner of Internal Revenue sought review before the appropriate Courts of Appeals. As to two of the taxpayers, the Court of Appeals for the Second Circuit re-

---

[1] *Gordon W. Hartfield and Edwin E. Healy,* 16 T. C. 200 (1951) (consolidated proceedings); *Hall C. Smith,* 11 T. C. 174 (1948).

versed,[2] while the Court of Appeals for the Sixth Circuit took a contrary view of the law.[3] We granted certiorari to resolve the conflict.[4]

All controlling facts in the three situations are similar. Each taxpayer reports his income on the cash receipts and disbursements method. Each, in the respective years involved, received a salary from a closely held corporation in which he was both an officer and a stockholder. The full amount of salary so received was reported as income for the year received. Subsequently, after audit of the corporate returns, the Commissioner disallowed the deduction by the corporations of parts of the salaries as exceeding reasonable compensation. As a result, deficiencies in income taxes were determined against the corporations. The Commissioner also determined that the officers were liable as transferees under § 311 of the Internal Revenue Code for the corporate deficiencies. The receipt of excessive salary was the transfer upon which the transferee liability was predicated. As a result of either litigation [5] or negotiation, various amounts became established as deficiencies of the corporations and as transferee liabilities of each of the three officers. In each case, the entire process of determining these amounts—from the start of the audit by agents of the Commissioner to the final establishment of the liabilities—occurred after the end of the year in which the salary was received and reported.

The question before the Court is whether part of the salary should be excluded from taxable income in the year of receipt since part was excessive salary and led to

[2] *Commissioner* v. *Hartfield*, 194 F. 2d 662 (1952).

[3] *Commissioner* v. *Smith*, 194 F. 2d 536 (1952).

[4] 344 U. S. 811, 813 (1952).

[5] *Charles E. Smith & Sons Co.* v. *Commissioner*, 184 F. 2d 1011 (1950).

transferee liability for the unpaid taxes of the corporations. The taxpayers contend that an adjustment should be made in the year of original receipt of the salary; the Government that an adjustment should be made in the year of payment of the transferee liability.

One of the basic aspects of the federal income tax is that there be an annual accounting of income.[6] Each item of income must be reported in the year in which it is properly reportable and in no other. For a cash basis taxpayer, as these three are, the correct year is the year in which received.[7]

Not infrequently, an adverse claimant will contest the right of the recipient to retain money or property, either in the year of receipt or subsequently. In *North American Oil* v. *Burnet*, 286 U. S. 417 (1932), we considered whether such uncertainty would result in an amount otherwise includible in income being deferred as reportable income beyond the annual period in which received. That decision established the claim of right doctrine "now deeply rooted in the federal tax system." [8] The usual statement of the rule is that by Mr. Justice Brandeis in the *North American Oil* opinion: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." 286 U. S., at 424.

---

[6] *Reo Motors* v. *Commissioner*, 338 U. S. 442 (1950); *Heiner* v. *Mellon*, 304 U. S. 271 (1938); *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359 (1931). See I. R. C., § 41.

[7] I. R. C., § 42 (a). Other permissive methods of accounting for tax purposes are the accrual basis, I. R. C., §§ 41 and 42, and the installment basis, I. R. C., § 44.

[8] *United States* v. *Lewis*, 340 U. S. 590, 592 (1951).

The phrase "claim of right" is a term known of old to lawyers. Its typical use has been in real property law in dealing with title by adverse possession, where the rule has been that title can be acquired by adverse possession only if the occupant claims that he has a right to be in possession as owner.[9] The use of the term in the field of income taxation is analogous. There is a claim of right when funds are received and treated by a taxpayer as belonging to him. The fact that subsequently the claim is found to be invalid by a court does not change the fact that the claim did exist. A mistaken claim is nonetheless a claim, *United States* v. *Lewis,* 340 U. S. 590 (1951).

However, we are told that the salaries were not received as belonging to the taxpayers, but rather they were received by the taxpayers as "constructive trustees" for the benefit of the creditors of the corporation. Admittedly, receipts by a trustee expressly for the benefit of another are not income to the trustee in his individual capacity, for he "has received nothing . . . for his separate use and benefit," *Eisner* v. *Macomber,* 252 U. S. 189, 211 (1920).

We do not believe that these taxpayers were trustees in the sense that the salaries were not received for their separate use and benefit. Under the equitable doctrine that the funds of a corporation are a trust fund for the benefit of creditors, a stockholder receiving funds without adequate consideration from an insolvent corporation may be held, in some jurisdictions, to hold the funds as a constructive trustee.[10] So it was that these taxpayers were declared constructive trustees and were liable as transferees in equity. A constructive trust is a fiction imposed as an equitable device for achieving justice.[11] It

---

[9] 4 Tiffany, Real Property, § 1147.

[10] 15A Fletcher, Cyclopedia Corporations, §§ 7369–7389.

[11] 3 Scott on Trusts, § 462.1; 3 Bogert, Trusts and Trustees, § 471.

lacks the attributes of a true trust, and is not based on any intention of the parties. Even though it has a retroactive existence in legal fiction, fiction cannot change the "readily realizable economic value" [12] and practical "use and benefit" [13] which these taxpayers enjoyed during a prior annual accounting period, antecedent to the declaration of the constructive trust. .

We think it clear that the salaries were received under a claim of individual right—not under a claim of right as a trustee. Indeed one of the parties concedes, as is manifestly so, that the reporting of the salary on the income tax returns indicated that the income was held under a claim of individual right. The taxpayers argue that the salary was subject to a restriction on its use.[14] Since all the facts which ultimately gave rise to the transferee liability were in existence at the end of the taxable year, we are told those facts were a legal restriction on the use of the salary. Actually it could not have been said at the end of each of the years involved that the transferee liability would materialize. The Commissioner might not have audited one or all of these particular returns; the Commissioner might not have gone through the correct procedure or have produced enough admissible evidence to meet his burden of proving transferee liability; [15] or, through subsequent profitable operations,

---

[12] *Rutkin* v. *United States,* 343 U. S. 130, 137 (1952).

[13] *Eisner* v. *Macomber,* 252 U. S. 189, 211 (1920).

[14] The rule announced in *North American Oil* v. *Burnet, supra,* requires a receipt without "restriction on use" as well as under a claim of right.

[15] I. R. C., § 1119 imposes upon the Commissioner the burden of proving transferee liability. This may be contrasted to the rule that normally the burden of proof is on the taxpayer contesting the determination of the Commissioner. I. R. C., § 1111; Rule 32, Tax Court of United States.

the corporations might have been able to have paid their taxes obviating the necessity of resort to the transferees.[16]

There is no need to attempt to list hypothetical situations not before us which put such restrictions on use as to prevent the receipt under claim of right from giving rise to taxable income. But a potential or dormant restriction, such as here involved, which depends upon the future application of rules of law to present facts, is not a "restriction on use" within the meaning of *North American Oil* v. *Burnet, supra.*

The inequities of treating an amount as income which eventually turns out not to be income are urged upon us. The Government concedes that each of these taxpayers is entitled to a deduction for a loss in the year of repayment of the amount earlier included in income.[17] In some cases, this treatment will benefit the taxpayer; in others it will not. Factors such as the tax rates in the years involved and the brackets in which the income of the taxpayer falls will be controlling. A rule which required that the adjustment be made in the earlier year of receipt instead of the later year of repayment would generally be unfavorable to taxpayers, for the statute of limitations would frequently bar any adjustment of the tax liability for the earlier year.[18] Congress has enacted an annual accounting system under which income is counted up at the end of each year. It would be disruptive of an orderly collection of the revenue to rule that the accounting must be done over again to reflect events occurring after the year for which the accounting is

---

[16] Transferee liability is secondary to the primary liability of the transferor. To sustain transferee liability the Commissioner must prove that he is unable to collect the deficiency from the transferor. 9 Mertens, Law of Federal Income Taxation, § 53.29.

[17] G. C. M. 16730, XV–1 Cum. Bull. 179 (1936).

[18] I. R. C., § 322 (b). See also I. R. C., §§ 275 and 311 (b).

made, and would violate the spirit of the annual accounting system. This basic principle cannot be changed simply because it is of advantage to a taxpayer or to the Government in a particular case that a different rule be followed.

The judgment of the Court of Appeals for the Second Circuit in No. 76, being consistent with this opinion, is affirmed, while the contrary judgment of the Court of Appeals for the Sixth Circuit in No. 138 is reversed.

*It is so ordered.*

MR. JUSTICE DOUGLAS dissents.