**BEACON PUBLISHING COMPANY,
a Kansas corporation, Petitioner,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent.**

No. 4920.

United States Court of Appeals,
Tenth Circuit.

Jan. 3, 1955.

Nathan Kobey, Denver, Colo. (of Kobey, Mitchell & McCarthy), Denver, Colo., for petitioner.

Grant W. Wiprud, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Davis W. Morton, Jr., Sp. Assts. to the Atty. Gen., were with him on the brief), for respondent.

Before BRATTON, MURRAH, and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The single question presented by this petition to review a decision of the tax court is whether sums received for prepaid newspaper subscriptions should have been included in the taxpayer's income for the year in which they were received, or spread over the unexpired subscription periods.

The material facts are not in dispute. The taxpayer kept its books and filed its income tax returns on the accrual basis. It published a daily newspaper in Wichita, Kansas. The present stockholders acquired their stock in 1928 under the terms of an agreement which limited the taxpayer's bills and accounts payable to $100,000, unless consented to in writing by the seller. Prior to 1943, it maintained on its books an account entitled "Country Circulation" in which credits were carried for country agents' receipts and prepaid subscriptions. No separate account was kept for prepaid subscriptions. The prepaid subscription income included in this account was not treated as a liability and was considered as income for the year in which it was received. Beginning in 1942, the taxpayer carried on an intensive campaign to secure prepaid subscriptions for the purpose of obtaining additional working capital without violating the $100,000 debt limitation agreement. The prepaid subscriptions were from thirty days to five years. The money received was not segregated and was used as working capital.

In 1943, the taxpayer employed an accounting firm to prepare a statement from its books of account. Without the consent of the Commissioner, this firm made a number of adjusting entries as of the close of 1943, one of which was to defer $95,686.92 by credit to an account entitled "Prepaid Subscriptions". For the years 1943 and 1944, the income received from the prepaid subscriptions was credited to the account as a liability, and the amount thereof deferred as subscription income. No attempt was made to allocate costs to this account or to show the cost of obtaining the prepaid subscriptions. It is conceded that the taxpayer received the prepaid payments without any restriction as to their use. In fact, they were obtained for use by the taxpayer. They were received and treated by the taxpayer as belonging to it. The Commissioner disallowed the deferment and included the full amount thereof in the income for

the year in which it was received, thereby increasing the tax liability for that year. On redetermination, the Tax Court sustained the action of the Commissioner. 21 T.C. 610.

Under Section 41 of the 1939 Internal Revenue Code, 26 U.S.C.A. § 41, the net income of a taxpayer must be computed upon the basis of the taxpayer's annual accounting period in accordance with the method of accounting regularly employed in keeping the books of the taxpayer. If this method does not clearly reflect the income, the computation shall be made by the Commissioner in accordance with such method as will clearly reflect the income. Section 42 provides that the amount of all gross income shall be included for the taxable year in which it was received unless "under methods of accounting permitted under Section 41, any such amounts are to be properly accounted for as of a different period." The obvious purpose of these provisions is to obtain from the taxpayer a return reflecting its true income and to treat income received and deductible disbursements consistently. United States v. Mitchell, 271 U.S. 9, 12, 46 S.Ct. 418, 70 L.Ed. 799.

Generally, the two methods of accounting used to determine income are the accrual and the cash receipts and disbursements methods. We are here concerned with the accrual method. Where a taxpayer keeps his books and files his returns on an accrual basis, income is accounted for in the year in which the amount is earned or becomes fixed, irrespective of when the payment is ultimately received. "It is the right to receive and not the actual receipt of income that determines when income must be included in gross income for income tax purposes. When the right to receive income becomes fixed and absolute, the duty of one on the accrual basis to report it arises." United States v. Harmon, 10 Cir., 205 F.2d 919, 920. See also Clark v. Woodward Construction Co., 10 Cir., 179 F.2d 176.

It is quite clear that under the accrual method of accounting it is the accrual of income and not its actual receipt that determines when it is taxable. H. Liebes & Co. v. Commissioner, 9 Cir., 90 F.2d 932. Thus, in this case, if the taxpayer had sold a large number of subscriptions to its paper for the taxable year, payments for which were to be made in a subsequent taxable year, the amount would accrue and be taxable when the subscriptions were sold. An important feature of the accrual system is that income shall be reported at such a time that it will, so far as possible, be offset by expenditures incident to earning it, rather than expenditures related to earning other income. Commissioner v. Security Flour Mills, 10 Cir., 135 F.2d 165, affirmed 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; Aluminum Castings Co. v. Routzahn, 282 U.S. 92, 51 S.Ct. 11, 75 L.Ed. 234; Niles Bement Pond Co. v. United States, 281 U.S. 357, 50 S.Ct. 251, 74 L.Ed. 901; Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733; American National Company v. United States, 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946; United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347.

In sustaining the Commissioner, the Tax Court applied what has become known as the "claim of right" doctrine. The Commissioner says in his brief that the doctrine is "the legal theory underlying the Tax Court's decision." This theory, as applied to taxable income, is that when a taxpayer receives funds during a taxable year under a claim that he has the right to possession and use of the funds with no restriction as to their disposition, it is income even though the claim subsequently is found to be invalid, and the taxpayer is required to repay the funds. North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560; Healy v. Commissioner, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007; Commissioner v. Security

Flour Mills Co., supra.[1] In each of these cases the question presented was whether the ownership or claim of ownership to the funds was sufficient for them to be taxed as income to the person receiving them, and there was no issue as to when they were returnable for taxation. In the so-called "claim of right" cases, the taxpayer's accounting system was of no importance. If taxable funds are received, under the claim of right doctrine they are returnable in the year received regardless of the method of accounting employed by the taxpayer.

In the instant case, there is no dispute as to the ownership of the funds. Admittedly, they belong to the taxpayer with no restriction as to disposition. The question is, when shall they be taxed? The tax court, as it has in other cases, took the literal language from the context of the opinions in the foregoing cases and applied it to the prepaid income here even though there is no dispute as to the ownership of the funds.[2] It gave no consideration to the fact that the taxpayer accounts for its income under the accrual method and will not incur the expenses necessary to earn the income until following taxable years. In other words, the tax court holds that advance payments received by a taxpayer, which are subject to income tax, must be returned in the year of receipt if owned or claimed by the taxpayer, regardless of the method of accounting, which has been adopted, or when the funds are actually earned. Such application of the rule limits the accrual method to that class of cases where money has been earned and the right to it has been fixed, but the receipt is delayed to a subsequent taxable period. The application of the doctrine would in most cases result in a distortion of an accrual taxpayer's true income. For instance, a construction contractor might be paid in advance for the construction of a building which would require the following year to complete, with all of the costs of construction incurred during the following year. A rancher might sell his next year's calf or lamb crop, and receive payment for it in advance, with the entire cost of production to be incurred the following year. A manufacturer might be paid in advance for articles to be made and delivered in a subsequent year. In each of these cases, if the tax court's application of the rule is carried to its logical conclusion, the prepaid receipts, because the taxpayer received them under a claim of right, would be taxable during the year in which they were received, even

---

1. In Healy v. Commissioner, supra [345 U.S. 278, 73 S.Ct. 674], in referring to the "claim of right" principle the Supreme Court said:

"The phrase 'claim of right' is a term known of old to lawyers. Its typical use has been in real property law in dealing with title by adverse possession, where the rule has been that title can be acquired by adverse possession only if the occupant claims that he has a right to be in possession as owner. The use of the term in the field of income taxation is analogous. There is a claim of right when funds are received and treated by a taxpayer as belonging to him. The fact that subsequently the claim is found to be invalid by a court does not change the fact that the claim did exist. A mistaken claim is nonetheless a claim, United States v. Lewis, 1951, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560."
(Footnotes omitted.)

In North American Oil Consolidated v. Burnet, supra [286 U.S. 417, 52 S.Ct. 615], the rule was succinctly stated as follows:

"If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

2. South Tacoma Motor Co. v. Commissioner, 3 T.C. 411; Your Health Club, Inc. v. Commissioner, 4 T.C. 385; E. B. Elliott Co. v. Commissioner, 45 B.T.A. 82; National Airlines, Inc., v. Commissioner, 9 T.C. 159; Automobile Club of Michigan v. Commissioner, 20 T.C. 1033; and see also South Dade Farms v. Commissioner, 5 Cir., 138 F.2d 818; Capital Warehouse Co. v. Commissioner, 8 Cir., 171 F.2d 395; Booth Newspapers, Inc., v. Commissioner, 17 T.C. 294, affirmed, 6 Cir., 201 F.2d 55.

though the taxpayer kept his books on an accrual basis. The right to return income on a completed contract basis would be destroyed. This would produce an incongruous result. It would permit the collection of taxes during periods not contemplated by the accrual method of accounting, and force the taxpayer into a cash receipts basis for all prepaid items. Such was not the reasoning or the purpose of the cases relied upon. Such an application of the rule requires the taxpayer to report its prepaid income on a cash basis and to accrue its deductions. It creates a hybrid bookkeeping system and results in a tax return which does not clearly reflect income. Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831. To a large extent, it destroys the principle inherent in the accrual method of accounting. Plainly, Section 42 contemplates that prepaid sums can be returned in a year other than when received. It says that income shall be included in the taxable year received, "unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period." This is not a case where the Commissioner has exercised his broad discretion to require a taxpayer to adopt an accounting method which will clearly reflect income, but is

one in which he has improperly applied a legal principle.

Congress has taken cognizance of the existing situation as to prepaid income and has sought to remedy it by statute. The 1954 Internal Revenue Code, with certain limitations, permits accrual basis taxpayers to defer the reporting of advanced payments as income until the year, or years, in which, under the taxpayer's regular method of accounting, the income is earned and to assure that items of income and deductions will be properly taken into account.[3]

The Commissioner urges that since the taxpayer had for years prior to 1943 and 1944 carried these accounts on its books as cash items, it cannot change its system of accounting without the consent of the Commissioner. Treasury Regulations 111, Sec. 29.41–2. The Commissioner is vested with wide discretion in determining whether a change in a taxpayer's method of accounting shall be allowed. Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Aluminum Castings Co. v. Routzahn, supra; United States v. Anderson, supra; United States v. American Can Co., 280 U.S. 412, 50 S.Ct. 177, 74 L.Ed. 518; Niles Bement Pond Co. v. United States, supra. The taxpayer, however, did not seek to change its accounting

3. The report of the Senate Finance Committee upon this section, Internal Revenue Code of 1954, Sec. 452, 26 U.S.C.A., reads:

"Present law provides that the net income of a taxpayer shall be computed in accordance with the method of accounting regularly employed by the taxpayer, if such method clearly reflects the income, and the regulations state that approved standard methods of accounting will ordinarily be regarded as clearly reflecting taxable income. Nevertheless, as a result of court decisions and rulings, there have developed many divergencies between the computation of income for tax purposes and income for business purposes as computed under generally accepted accounting principles. The areas of difference are confined almost entirely to questions of when certain types of revenue and expenses should be taken in-

to account in arriving at net income.

"The changes embodied in the House bill and in your committee's bill are designed to bring the income-tax provisions of the law into harmony with generally accepted accounting principles, and to assure that all items of income and deductions are to be taken into account once, but only once in the computation of taxable income.

\*     \*     \*     \*     \*

"The House and your committee's bill permit accrual-basis taxpayers to defer the reporting of advance payments as income until the year, or years, in which, under the taxpayer's regular method of accounting, the income is earned." Report of the Committee on Finance of the United States Senate, p. 62, 1954 U.S. Code Congressional Service, pp. 4693, 4694.

system. It did no more than apply the method adopted and in use to clearly reflect its income. This the taxpayer had the right to do and the Commissioner had the right to require it. United States v. American Can Co., supra. A discretion of the Commissioner does not empower him to add to the taxpayer's gross income for a given year, an item which rightfully belongs in another year. Commissioner v. Frame, 8 Cir., 195 F.2d 166; Commissioner v. Mnookin's Estate, 8 Cir., 184 F.2d 89.

We have no doubt that the taxpayer could not change its method of keeping books without the consent of the Commissioner, even as to items, if the change resulted in an avoidance of the payment of taxes due, nor do we have any doubt but that a taxpayer may, without the consent of the Commissioner, apply the method of accounting which he has adopted, though not theretofore applied to a particular item, when that change will correct errors and clearly reflect his income. We think the change in this case falls within the latter category.

The decision of the Tax Court is reversed.

BRATTON, Circuit Judge (dissenting).

The taxpayer received the funds representing prepaid subscriptions under claim of right without any restrictions in respect to their use. The funds were placed in the capital structure of the taxpayer with no limitations or proscriptions upon their application, enjoyment, or disposition. The taxpayer was required to make refunds in case of cancellations of prepaid subscriptions, but that obligation was contingent. It depended entirely upon whether cancellations were made. Unless a subscription should be cancelled no refund would be made. It seems clear to me that under the settled law in force at the time, the entire amount received for prepaid subscriptions constituted income returnable for the year in which it was received, even though the taxpayer kept its books and made its returns on the accrual basis.

Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; South Dade Farms v. Commissioner, 5 Cir., 138 F.2d 818; Clay Sewer Pipe Association v. Commissioner, 3 Cir., 139 F.2d 130; Capital Warehouse Co. v. Commissioner, 8 Cir., 171 F.2d 395. And therefore I would affirm the decision of the Tax Court.