*Decision will be entered under Rule 50.*

A. A. EMMERSON AND IDA CAROLYN EMMERSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

R. H. EMMERSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3590–63, 3591–63. Filed April 21, 1965.

*Alvin D. McNeil* and *Jack D. Swaner, Jr.*, for the petitioners.
*David R. Brennan*, for the respondent.

OPINION

ATKINS, *Judge:* The respondent determined deficiencies in income tax against the petitioners A. A. Emmerson and Ida Carolyn Emmerson for the taxable years 1958, 1959, and 1960 in the respective amounts of $1,295.60, $3,611.53, and $3,308.74, and against the petitioner R. H. Emmerson for the taxable years 1959 and 1960 in the respective amounts of $1,460.11 and $2,872.

The parties have reached agreement as to all the issues for the various taxable years except the issue whether amounts paid as purchase price of logs in 1959 and 1960 by a corporation owned by the petitioners to a partnership of which the petitioners were the sole members represented dividends to the extent the amounts exceeded the fair market value of the logs, as determined by the respondent, or whether the full amount received constituted proceeds from the sale of the logs resulting in the receipt of long-term capital gain as reported by petitioners.

The facts with respect to this issue have been stipulated and the stipulations are incorporated herein by this reference.

Petitioners A. A. Emmerson and Ida Carolyn Emmerson are husband and wife residing in Arcata, Calif. They filed joint income tax returns for the taxable years 1958, 1959, and 1960 on the cash receipts and disbursements method with the district director of internal revenue at San Francisco, Calif.

Petitioner R. H. Emmerson is an individual residing in Arcata, Calif. He filed an individual tax return for each of the taxable years 1959 and 1960 on the cash receipts and disbursements method, with the district director of internal revenue at San Francisco, Calif. R. H. Emmerson and A. A. Emmerson will hereinafter be referred to as the petitioners.

The petitioners were the sole and equal members of a partnership, R. H. Emmerson & Son, hereinafter referred to as the partnership. They also owned equally all the stock in R. H. Emmerson & Son, a California corporation, hereinafter referred to as the corporation. The principal activity of the corporation was the milling of logs into finished lumber and the sale of such finished lumber to third parties. The corporation purchased logs used in its milling operation on the open market and relied upon the partnership for an insured supply of logs. The corporation filed its corporate income tax returns on an

accrual method of accounting and on the basis of a taxable year ending June 30. The corporation and the partnership each maintained a separate set of books and each filed separate tax returns.

On March 31, 1959, an agreement was executed on behalf of the partnership, as seller, and the corporation, as buyer, for the sale and purchase of certain timber. This agreement provides in part as follows:

I

Seller hereby grants to Buyer, during the period commencing on the date hereof and ending on December 31, 1959, the exclusive right and privilege of cutting and removing from the property described in Exhibit A attached hereto and by this reference incorporated herein, all of the merchantable timber thereon.

II

(a) Subject to the provisions of paragraph (b) hereof, Buyer shall pay to Seller for all merchantable timber cut and removed, amounts determined as follows:

1. $30.00 per M board feet for Douglas Fir
2. $20.00 per M board feet for White Fir and/or Hemlock
3. $100.00 per M board feet for Port Orford Cedar

Said merchantable timber cut and removed shall be scaled by the Northern California Log Scaling and Grading Bureau or by a mutually agreed upon scaler.

(b) The prices specified in subdivision (a) of this paragraph II represents the considered opinion of both Buyer and Seller of the fair market value at the date of execution of this agreement of the timber to be cut and removed hereunder. However, in the event the Internal Revenue Service, in determining the tax liabilities of the parties hereto for any year involving transactions under this agreement, adjusts any of the prices specified in subdivision (a) of this paragraph II, either upwards or downwards, the price as "finally determined" for federal income tax purposes shall be used by Buyer and Seller to recompute the amount payable for timber cut and removed under this agreement. For the purposes of this subdivision (b) the aforesaid "finally determined" price shall be either (1) the price agreed upon by the Internal Revenue Service and each of the parties hereto in settlement of their federal income tax liabilities for the year in question or (2) the amount determined for the year in question by the United States Tax Court or the United States District Court unless an appeal from such determination is taken and in such case the "finally determined" price shall be as determined by the United States Court of Appeals. Any difference between the price specified in subdivision (a) of this paragraph II and the price "finally determined" hereunder shall be paid by Seller to Buyer or refunded by Buyer to Seller, as the case may be, within sixty days after such price shall have been "finally determined".

\*       \*       \*       \*       \*       \*       \*

XI

Neither this agreement, nor any interest therein, shall be transferable or assignable by Buyer, except upon the written consent of Seller.

By agreement dated January 2, 1960, the above agreement was extended indefinitely. By agreement dated July 23, 1960, the price provided for Port Orford cedar was reduced to $80 per 1,000 board feet.

During 1959, the corporation purchased from the partnership 307,580 feet of Port Orford cedar stumpage at $100 per 1,000 board feet pursuant to the above-mentioned agreement. During 1960, it purchased from the partnership 297,000 feet of Port Orford cedar at $80 per 1,000 board feet.

The corporation in its returns treated the amounts paid as cost of goods sold; the partnership reported the gain on the sale of the timber as capital gain under section 631(b) of the Internal Revenue Code of 1954; and the petitioners, as partners, reported their distributable shares of such gain in their returns.

The respondent determined that the fair market value of the Port Orford cedar when sold was $35 per 1,000 board feet and reduced the corporation's claimed cost of goods sold by the amount paid to the partnership in excess of $35 per 1,000 board feet, namely, $19,992.70 for the taxable year ended June 30, 1960, and $13,365 for the taxable year ended June 30, 1961, or a total of $33,357.70. The corporation and the partnership conceded that the fair market value was $35 as determined by respondent, and the corporation in 1963 agreed to the assessment against it, as a result of such adjustments, of additional taxes for the taxable years ended June 30, 1960 and 1961, respectively.

In October 1963, the corporation, in order to reflect the reduction in the cost of the Port Orford cedar purchased from the partnership during 1959 and 1960, debited the account "Due Ptn. for Weitchpec Stumpage" by the amount of $33,357.70 and credited its retained earnings by a like amount. Also, in October 1963, the partnership, for the same reason, credited the account "Due from corporation (AR)" by the amount of $33,357.70, and debited the capital account of each partner by the amount of $16,678.85. There is no evidence to show whether the amount paid by the corporation to the partnership in excess of $35 per 1,000 board feet of Port Orford cedar was actually refunded by the partnership or the partners to the corporation.

In the notices of deficiency the respondent determined that the amounts paid by the corporation in excess of the determined fair market value of the Port Orford cedar purchased from the partnership represented distributions of the corporation's earnings and profits taxable to the petitioners as dividends. Consistently, the respondent excluded such amounts from the selling price of the logs and consequently from the capital gain reported by the partnership and the petitioners as partners, and allowed each of the petitioners a dividends-received credit.

The petitioners on brief do not claim that the amounts paid by the corporation in 1959 and 1960 in excess of the fair market value of the logs are to be excluded from the computation of their tax liability for

those years.[1] It is their position that such amounts were properly treated by them as proceeds of sales by the partnership of logs and that they are to be taken into account in computing the capital gain derived upon such sales. They maintain that the respondent was in error in determining that such amounts constituted taxable dividends to them.

Section 301 of the Internal Revenue Code of 1954 provides that a distribution of property made by a corporation to a shareholder with respect to its stock shall be included in gross income to the extent it constitutes a dividend as defined in section 316. Section 316 provides that the term "dividend" means any distribution of property made by a corporation to its shareholders out of its earnings and profits accumulated after February 28, 1913, or out of its earnings and profits of the taxable year. The petitioners contend that there was here no payment by the corporation to them in their capacity as shareholders—that the amounts paid by the corporation were paid under the contractual arrangement with the partnership for the sale of logs. In this connection, they rely upon section 1.301–1(c) of the Income Tax Regs., which provides as follows:

> Section 301 is not applicable to an amount paid by a corporation to a shareholder unless the amount is paid to the shareholder in his capacity as such.

The petitioners misconstrue the meaning of this regulation. Many payments made by corporations to persons who are stockholders for services, goods, etc., are not taxable as dividends. The regulation clearly has reference to such payments. However, such regulation cannot be considered as precluding the taxation, as dividends, of amounts which in reality constitute distributions of a corporation's earnings and profits to its shareholders, even though the payments purport to be based upon the receipt by the corporation of consideration and are not designated as dividends. Thus, it has been held that when a shareholder transfers property to a corporation for an amount in excess of the fair market value of the property, the excess constitutes a dividend. *Goldstein* v. *Commissioner*, (C.A. 9) 298 F. 2d 562, affirming a Memorandum Opinion of this Court, and *Albert E. Crabtree*, 22 T.C. 61, affd. (C.A. 2) 221 F. 2d 807. Similarly, excessive "rentals" paid by a corporation to its stockholder constitute dividends. *Limer-*

---

[1] On brief the petitioners state that it is their position that "the whole of the contract price received in 1959 and 1960 is entitled to be treated as capital gain under section 631(b) of the 1954 Code, and that the rebate which was paid to the corporation in 1963 is a long-term capital loss." The petitioners correctly concede that the amounts in question are not to be excluded from the computation of their tax liability for 1959 and 1960, we think, in view of the well-established principle that amounts received in 1 taxable year under a claim of right and without restriction as to their use are taxable in the year of receipt, irrespective of events transpiring in subsequent years. See *North American Oil Consolidated* v. *Burnet*, 286 U.S. 417; *United States* v. *Lewis*, 340 U.S. 590; and *Healy* v. *Commissioner*, 345 U.S. 278. We, of course, express no opinion with respect to the question whether the petitioners are entitled to any deduction for the year 1963, since such year is not before us.

*icks, Inc.*, 7 T.C. 1129, affd. (C.A. 5) 165 F. 2d 483. And it is well established that payments may constitute dividends even though there is no formal dividend declaration. As stated in *Clark* v. *Commissioner*, (C.A. 9) 266 F 2d 698, affirming on this issue a Memorandum Opinion of this Court:

To constitute a distribution taxable as a dividend, the benefit received by the shareholder need not be considered as a dividend either by the corporation or its shareholders, declared by the board of directors, nor other formalities of a dividend declaration need be observed, if on all the evidence there is a distribution of available earnings or profits under a claim of right or without any expectation of repayment. Internal Revenue Code (1939), 26 U.S.C. Section 115; *Healy* v. *Commissioner of Internal Revenue* (1953), 345 U.S. 278, 281; *Dawkins* v. *Commissioner of Internal Revenue* (1956), 8 Cir., 238 F. 2d 174, 178; *Chesbro* v. *Commissioner*, [21 T.C. 123], 129; *Paramount-Richards Theaters, Inc.* v. *Commissioner of Internal Revenue* (1946), 5 Cir., 153 F. 2d 602, 604; 1 Mertens, Law of Federal Income Taxation, Section 907, Section 912. * * *

See also *Irving Sachs*, 32 T.C. 815, affd. (C.A. 8) 277 F. 2d 879, certiorari denied 364 U.S. 883; and *American Properties, Inc.*, 28 T.C. 1100, affd. (C.A. 9) 262 F. 2d 150.

It is our conclusion that the effect of the payment by the corporation to the partnership of amounts in excess of the fair market value of the logs was the distribution to the petitioners of dividends in the amount of the excessive payments.[2] Neither of the parties makes reference to section 702(a) of the Internal Revenue Code of 1954, which provides that each partner shall take into account his distributive share of the partnership's gains and losses, or to section 702(b), which provides that the character of any item of income or gain included in a partner's distributive share shall be determined as if such item were realized directly from the sources from which realized by the partnership. Suffice it to say that we do not view section 702 as preventing the treatment of an amount received by a partnership, ostensibly as selling price of property, as a dividend to the individual partner, if in substance and effect such amount constitutes a distribution of a corporation's earnings and profits to the shareholder. Actually, section 702(b) contains a "conduit" rule. See H. Rept. No. 1337, 83d Cong., 2d Sess., p. A222; and S. Rept. No. 1622, 83d Cong., 2d Sess.. p. 377. When the excessive payments are treated as if realized by the partners directly from the corporation, as the statute contemplates, it becomes apparent that the instant case falls within the rule stated in the cases cited hereinabove in which the stockholders dealt directly with their corporations.

*Decisions will be entered under Rule 50.*

---

[2] The petitioners do not question that the corporation had earnings and profits at least equal to the amounts in question.