CONCORD INSTRUMENTS CORPORATION, F.K.A. CONCORD CONTROL, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Concord Instruments Corp.
Docket No. 15863-90
United States Tax Court
T.C. Memo 1992-589; 1992 Tax Ct. Memo LEXIS 607; 64 T.C.M. (CCH) 979; October 1, 1992, Filed *607 P, a manufacturer of various automotive parts and accessories, collected from its customers excise taxes arguably imposed by sec. 4061, I.R.C., on certain items sold to its customers (disputed items). Awaiting clarification of the applicability of the excise tax, P retained the excise taxes collected on the disputed items in its bank account, rather than remitting those funds to the Internal Revenue Service. Beginning in 1971, P used unremitted excise taxes to purchase marketable securities in its own name. In 1971 or 1972, the IRS made clear, through revenue rulings and otherwise, that the excise tax did not apply to the disputed items. Subsequent to that clarification, P's policy and practice was to refund improperly collected excise taxes to any customer requesting the same. After the 10-year limitations period for bringing actions for refund against P expired in 1982, P reported the unremitted excise taxes (excluding the portion previously refunded) on its return for the 1982 taxable year. Both parties have requested partial summary judgment, pursuant to Rule 121, Tax Court Rules of Practice and Procedure, on the issue of when the unremitted excise taxes are includable *608 in P's income. R argues that P held the unremitted excise taxes under a claim of right in 1971 or 1972 and therefore had unreported income in one of those years. North American Oil Consolidated v. Burnet, 286 U.S. 417 (1932). P argues that the unremitted excise taxes were not held under a claim of right until 1982 and therefore are includable only in that year. Held: The claim of right doctrine does not apply, as to 1971 or 1972, because P did not then claim a right to the collected and unremitted excise taxes. At all times before 1982, P acknowledged that those funds belonged to its customers. Consequently, the unremitted excise taxes are includable in P's income in 1982 and not before. Petitioner's motion will be granted; respondent's motion will be denied. For Petitioner: Michael I. Saltzman, Kevin J. Liss and Barbara T. Kaplan
For Respondent: Nancy B. Herbert and Jeffrey L. Bassin. HALPERN
HALPERN
MEMORANDUM OPINION HALPERN, Judge: By a notice of deficiency dated April 20, 1990, respondent determined deficiencies as follows: Tax Year Ended
Deficiency
November 30, 1968
$ 39,130
November 30, 1971
705,986
December 31, 1971
702,993
December 31, 1972
798,313
December 31, 1975
172,732
December 31, 1982
483,928
December 31, 1983
16,383
*609 Both petitioner and respondent have filed a motion for partial summary judgment, pursuant to Rule 121. [1] The motions are mutually exclusive in that, if we were to grant one, we would, of necessity, have to deny the other. The only issue here considered is whether we ought to grant one of the motions for partial summary judgment and to deny the other. The question presented is whether, by application of the claim of right doctrine, petitioner must include in its gross income certain funds, collected as Federal excise taxes, in (1) the taxable period in which it became clear that remittance of those funds to the Internal Revenue Service would not be required, or (2) the taxable period in which the period of limitations for petitioner's customers' bringing an action for refund of those unremitted excise taxes expired. *610 Background
The facts alleged by the parties are substantially similar. Facts alleged by either party, to which the other party has not objected, have been accepted as established for the purpose of deciding the motions considered herein. Petitioner was an accrual method taxpayer during the taxable years here at issue. During, among other periods, a period beginning in 1966 and ending in 1971, petitioner's operations included the manufacture and sale of various automotive accessories. During that period, section 4061 imposed an excise tax on manufacturers of certain automotive parts and accessories. With respect to the items to which the excise tax applied, the manufacturer was charged with the responsibility of collecting the excise tax and remitting the same to the Internal Revenue Service (IRS). Between 1966 and 1971, it was unclear whether the excise tax imposed by section 4061 applied to certain of the automotive parts and accessories sold by petitioner (the disputed items). [2] Petitioner sought guidance from the IRS. Pending further clarification, petitioner continued to collect excise taxes on the disputed items, but retained those funds (the unremitted excise taxes), *611 rather than remitting them to the IRS. Petitioner deposited the unremitted taxes into a depository account. Petitioner did not maintain a separate account for the unremitted taxes, nor did it appoint a trustee to control or supervise those funds. Petitioner has, however, maintained books and records calculating the unremitted taxes held, which are sufficient to identify the customers, the specific items sold, and the amount of excise tax paid. On its books, petitioner established a reserve in the amount of the disputed excise tax liability. Beginning in 1971, petitioner purchased in its own name certain marketable securities using, in part, the unremitted taxes. In November, 1971, the IRS issued three revenue rulings in which it may have determined that the excise tax did not apply to items such as the disputed items. On December 21, 1971, respondent issued to petitioner a technical advice memorandum, providing *612 that most of the disputed items were exempt from the excise tax. Sometime during petitioner's taxable year ending December 31, 1972, respondent completed its excise tax examination of petitioner, informing petitioner that the disputed items were not subject to the excise tax. [3]
Subsequent to that determination, petitioner's policy and practice was to refund erroneously collected excise taxes to all customers requesting same. Petitioner refunded over $ 90,000 to customers between September 1972 and January 1973. On its Federal income tax returns for the taxable periods ending November 30, 1971, December 31, 1971, and December 31, 1972, petitioner included no portion of the unremitted taxes. Petitioner reported the unrefunded, unremitted excise taxes on its return for the 1982 taxable year, upon the expiration of the 10-year *613 period during which the customers might have sued petitioner for a refund of those taxes. Discussion
I. Summary Judgment
Summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). Summary judgment, however, is not a substitute for a trial, in that disputes over factual issues are not to be resolved in such proceedings. Espinoza v. Commissioner, 78 T.C. 412, 416 (1982); Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. Espinoza v. Commissioner, supra; Shiosaki v. Commissioner, supra at 863. Nevertheless, the opposing party cannot rest upon the allegations or denials in his pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." Rule *614 121(d); Morrison v. Commissioner, 81 T.C. 644, 650 (1983). With respect to the motions to be considered herein, neither party has set forth any specific facts demonstrating a genuine issue for trial, and we therefore find partial summary judgment to be appropriate in this case. II. Background: The Claim of Right Doctrine
The annual accounting system, on which our taxation system is based, is somewhat difficult to reconcile with the reality that ownership of an income item is sometimes subject to dispute, which dispute may not be resolved during the taxable period in which the item is received by the taxpayer. [4] In such circumstances, a choice must be made whether or not to include the disputed item in gross income for the taxable period in which it was received, although the ultimate entitlement to that item is unknown. *615 The Supreme Court, faced with that choice, held that the mere existence of a dispute as to the ownership of an income item will not suffice to warrant exclusion of that item from the taxpayer's gross income in the taxable period received. North American Oil Consolidated v. Burnet, 286 U.S. 417 (1932). The facts of North American Oil are as follows: The taxpayer operated an oil field, the legal title to which was in the name of the United States. In 1916, the United States, claiming beneficial ownership, instituted a suit to oust the taxpayer from possession and secured the appointment of a receiver to operate the oil field. In 1917, a Federal District Court held the taxpayer to be entitled to the income earned from the operation of the oil field during 1916; the taxpayer received that income in 1917. The Government still claimed ownership of that income, however, and the appeals in that case were not ultimately resolved until 1922. The Supreme Court held that the taxpayer must report the disputed income in 1917, when it was received under a claim of right, even though ownership of that income was not ultimately resolved until 1922. The net *616 profits earned by the property in 1916 were not income of the year 1922 -- the year in which the litigation with the Government was finally terminated. They became income of the company in 1917, when it first became entitled to them and when it actually received them. If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to * * * [report], even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * * [Id. at 424.] There are therefore two prerequisite prongs to the application of the claim of right doctrine. First, the taxpayer must hold the funds under a claim of right; second, the taxpayer must hold the funds without restriction as to their disposition. Id.
III. Respondent's Argument
Respondent argues that the first prong of the claim of right doctrine has been satisfied since petitioner began collecting excise taxes on the disputed items in 1966, arguing that petitioner, at all times since then, has treated the unremitted excise taxes as belonging *617 to it. As for the second prong, respondent concedes that the unremitted excise taxes were initially held subject to a restriction on disposition, on account of the then-apparent applicability of the excise tax to the disputed items. Respondent argues, however, that that restriction was removed sometime during 1971 or 1972, by either (i) the revenue rulings, issued in November 1971, (ii) the superseding technical advice memorandum, issued in December 1971, or (iii) the completion of the audit, sometime in 1972. Respondent argues that, although it can reasonably be disputed which of those three events (all occurring in 1971 or 1972) removed the restriction on petitioner's disposition of the unremitted excise taxes, thereby satisfying the second and final prong of the claim of right doctrine, it cannot fairly be disputed that one of those three events accomplished that result. Therefore, respondent concludes, the unrefunded, unremitted excise taxes must be included in petitioner's income for 1 of those 2 years, when the claim of right doctrine was fully satisfied. As will be discussed below, we disagree with respondent's argument. We find that the first prong of the claim of right *618 doctrine was not satisfied until 1982: petitioner did not, before 1982, claim a right to the unremitted excise taxes. IV. Application of the Claim of Right Prong of the Doctrine in 1971 or 1972
A taxpayer holds funds under a claim of right when those funds are "received and treated by the taxpayer as belonging to him." Healy v. Commissioner, 345 U.S. 278, 282 (1953). Respondent argues that, at all times, including 1971 and 1972, petitioner treated the unremitted excise taxes as belonging to it, emphasizing that petitioner deposited those funds into its bank account (in which they commingled with other funds), exercised complete control over those funds, and used a portion thereof to purchase marketable securities in its own name. We disagree with respondent's conclusion. Petitioner's actions make clear that until 1982 it considered the unremitted excise taxes the property of its customers. As stated, petitioner refunded over $ 90,000 of unremitted excise taxes between September 1972 and January 1973 and had a policy of making such refunds to all customers requesting the same. Based on the foregoing, we conclude that petitioner did not hold *619 the unremitted excise taxes under a claim of right. Respondent cites several cases for the proposition that petitioner's manner of dealing with the funds at issue -- commingling the unremitted excise taxes with other funds in a bank account and using some portion thereof to purchase marketable securities -- demonstrates a claim of right in 1971 and 1972. See Nordberg v. Commissioner, 79 T.C. 655, 664 (1982), affd. without published opinion 720 F.2d 658 (1st Cir. 1983); Professional Insurance Agents v. Commissioner, 78 T.C. 246, 269 (1982), affd. 726 F.2d 1097 (6th Cir. 1984); Bradley v. Commissioner, 57 T.C. 1, 7 (1971). Those cases are distinguishable. In Nordberg, the taxpayer, a holder of certain notes in a corporation we shall call X Corp., received a distribution of $ 100,000 with the understanding that other creditors of X Corp. might have rights whose enforcement would require him to restore some or all of those funds. The taxpayer used virtually all those funds to install a swimming pool, to construct an addition to his *620 house, to pay legal fees, and to vacation in Bermuda. The taxpayer in Nordberg had little in liquid assets and testified, quite implausibly, that if called upon to make repayment, he intended to use the equity in his house to borrow the necessary funds. Accordingly, we there held that the taxpayer's manner of dealing with the disputed funds -- spending them when they could not practicably be replaced -- belied his claim that he recognized an existing and fixed obligation to repay those funds, and, instead, clearly demonstrated that he retained them under a claim of right. Nordberg v. Commissioner, supra at 664-666. Here, in contrast, petitioner maintained a reserve on its books in the amount of the disputed liability, deposited the funds in question into bank accounts and purchased marketable securities, which can easily be reconverted into cash, in order to satisfy petitioner's acknowledged and fixed obligation to its customers. In Professional Insurance Agents, the taxpayer, a professional association of insurance agents, cancelled its group insurance policy with Time Insurance Co. (Time) as of January 1, 1974, receiving a refund of *621 an "experience rating reserve" (ERR). [5] That refund was received on March 31, 1975, but the taxpayer agreed to remain liable, to the extent of the refund, for any delinquent claims that might be brought against Time at some later date. The taxpayer did not segregate or otherwise earmark those funds, but simply deposited them, enjoying full use and control thereafter. We there held that the taxpayer clearly was subject to, and acknowledged, nothing more than a contingent obligation to reimburse Time if additional claims were filed and that the taxpayer's behavior was inconsistent with its argument that it held the refund in trust for its members' benefit. Professional Insurance Agents v. Commissioner, supra at 268-270. That situation is in stark contrast to the one before us, where petitioner's obligation to refund (upon request) all unremitted excise taxes was fixed and petitioner consistently acknowledged that fixed obligation by making all such refunds requested of it. [6]
*622 Bradley v. Commissioner, 57 T.C. 1 (1971), is also distinguishable. In Bradley, the taxpayer received a "commission" for services never actually rendered, deposited the funds into his savings account, and drew checks upon them. We there held the taxpayer to have received the funds under claim of right because there was no consensual recognition of an obligation to repay those funds. Id. at 7. Here, by contrast, petitioner repeatedly acknowledged an obligation to refund the unremitted excise taxes to its customers and had a policy and practice of making such refunds. All respondent offers in support of her determination that, in 1971 or 1972, petitioner held the unremitted excise taxes under a claim of right is petitioner's depositing of those funds into the depository account, and purchasing of marketable securities with funds therefrom. While those actions may be probative of a claim of right, they are not determinative. Here, petitioner's refunding of unremitted excise taxes to all customers requesting such refund is inconsistent with the argument that it held those funds under a claim of right. The claim *623 of right doctrine does not apply as to 1971 or 1972. Respondent's motion will be denied. V. Petitioner's Argument
Respondent's only objection to petitioner's argument that the unrefunded unremitted excise taxes are includable in 1982 is her argument that those funds are includable in either 1971 or 1972. We therefore deem respondent to have conceded that, if the unrefunded, unremitted excise taxes are not includable in 1971 or 1972, that they are includable, as petitioner argues, in 1982. Petitioner's motion will be granted. An appropriate order will be issued. Footnotes
1. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue.↩
2. It is not clear whether those doubts were resolved in 1971 or 1972, as will be explained below.↩
3. That determination was not a formal closing agreement binding on the IRS, but is accepted by the parties as sufficient to establish that the excise tax was inapplicable to the disputed items.↩
4. For an accrual method taxpayer, such as petitioner, the proper period for taxation may precede the taxable year of receipt, if prior to that taxable year all the events have occurred that fix the right to receive the item of income and the amount of that item can be determined with reasonable accuracy. Compare sec. 1.446-1(c)(1)(i) with (ii), Income Tax Regs. Since that distinction is not of importance here, we will for simplicity's sake assume no difference in result between the cash and accrual methods and speak only of "receipt" of the income in question.↩
5. An ERR represents a percentage of the premium dollar that is set aside by the insurance company for protection against future unforeseen losses and is intended to add a measure of stability to annual premium rate increases.↩
6. By contrast, we noted in Professional Insurance Agents v. Commissioner, 78 T.C. 246, 269 (1982), affd. 726 F.2d 1097↩ (6th Cir. 1984), that the taxpayer "has never made any attempt to distribute the funds to its members. Under these circumstances, we cannot conclude that it held the funds in trust for their benefit." (Fn. ref. omitted.)