T.C. Summary Opinion 2005-39


UNITED STATES TAX COURT


MARK A. FILER AND JULIE J. FILER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4014-04S.          Filed April 12, 2005.


Mark A. Filer and Julie J. Filer, pro sese.

<u>Margaret A. Martin</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in

effect at the time that the petition was filed.[1]  The decision to

_____

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2001,
the taxable year in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.  All monetary amounts are
rounded to the nearest dollar.

be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 2001 of $7,052 and an accuracy-related penalty under section 6662(a) of $1,410.

After concessions, the issues for decision are:[2] (1) Whether a distribution received by petitioner Julie J. Filer as the successor owner of her deceased mother-in-law's annuity contract is includable in petitioners' gross income. We hold that it is to the extent provided herein. (2) Whether petitioners are liable under section 6662(a) for an accuracy-related penalty for substantial understatement of income tax. We hold that they are not.

Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts, supplemental stipulation of facts, and accompanying exhibits.

At the time that the petition was filed, petitioners resided in Orangevale, California. (References to petitioners individually are to Mark or Julie.)

---

[2] Petitioners concede: (1) They received unreported interest income of $28, and (2) they are not entitled to an IRA deduction. Respondent concedes that petitioners are not liable under sec. 72(t) for the additional tax on an early distribution from a qualified retirement plan.

On November 17, 2000, Mark's mother, Phyllis D. Filer (Phyllis), died.  She was survived by her three children:  Mark, Paul Filer (Paul), and Heidi Higdon (Heidi) (hereinafter referred to collectively as the children).

At the time of her death, Phyllis owned a flexible premium deferred annuity (annuity) with Anchor National Life Insurance Co. (Anchor).  Phyllis applied for the annuity on October 29, 1985. On the application form, Phyllis named herself both as the owner and primary beneficiary, she designated Julie both as the annuitant and as the successor owner, and she designated Mark and Paul as the contingent beneficiaries to share equally.[3]  Phyllis paid the initial annual premium of $11,704, and Anchor issued the annuity to Phyllis on November 5, 1985, with a retirement date of November 5, 2036.[4]

The annuity contract provided that Phyllis could change the successor owner or beneficiaries at any time by filing a written request.  In addition, the annuity contract contained the following provisions:

---

[3]  The annuitant is the person on whose life the contract is issued.

The successor owner is the "person named by the owner to receive all ownership rights upon the death of the owner."  The contract further stated that the naming of a successor owner is not an assignment, nor is the successor owner an assignee.

[4]  The retirement date is the date on which annuity payments would begin.

(1)  If Julie is alive on the retirement date, Phyllis will begin receiving annuity payments.  If Phyllis subsequently dies, any remaining payments will be paid to the contingent beneficiaries.

(2)  If Phyllis predeceases Julie before the retirement date, Julie will become the successor owner, and she must terminate the contract within 1 year after Phyllis's death by either:  (1) Surrendering the contract as described in the contract's nonforfeiture provisions; or (2) electing an annuity as described in the contract's settlement options provisions. The nonforfeiture provisions provide that Julie could take free annual withdrawals or surrender all or part of the contract.  The settlement options provide that Julie could take partial surrenders of the cash value, fixed amount installments, fixed period installments, life annuity with a period certain, installment refund annuity, or a joint and survivor annuity.

(3)  If Julie predeceases Phyllis before the retirement date, Phyllis will receive the death benefit of the total cash value of the contract less any unpaid loans.

A few years after the annuity was issued, Phyllis told Julie that she placed Julie's name on the annuity as the annuitant and successor owner because Mark was busy, Paul's lifestyle was different, and Heidi lived in Florida and that Phyllis knew that "if anything ever happened to me [Phyllis], that you [Julie]

would be fair and you would make sure that everyone got their fair share." Phyllis was a big part of petitioners' family's lives, and Phyllis and Julie had a very close relationship. Because of their close personal relationship, Julie understood Phyllis intended the "retirement plan or whatever you call it" to benefit Phyllis's children. At that time, Julie told Mark about Phyllis's intent with respect to the annuity.

At the time of her death, Phyllis also had a last will and testament, which she executed on November 19, 1991. At that time, Phyllis and Mark met with an attorney to draft her will. In the will, Phyllis appointed Mark as the executor, and she bequeathed her estate equally among her children.

In addition to her will, Phyllis executed a declaration of trust for the Phyllis D. Filer Revocable 1991 Trust (1991 Trust) on November 19, 1991. In the 1991 Trust, Phyllis directed that upon her death, the trust corpus be distributed equally among the children.

After Phyllis's death and under the terms of the annuity, Julie became the successor owner of the annuity effective November 30, 2000.

Around January 2001, Mark, on Julie's behalf, contacted Anchor about the annuity. After Mark sent Anchor the death certificate, Anchor sent a certified check for $27,641 payable to Julie, individually, representing the lump-sum cash surrender

value of the annuity.  Julie immediately endorsed the check and distributed one-third of such amount each to Mark, Paul, and Heidi.

For the taxable year 2001, Anchor issued a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting that Julie received a gross distribution of $27,641 and a taxable distribution of $15,936.

On their 2001 Federal income tax return, petitioners did not report any part of the $27,641 distribution.  Respondent determined that petitioners received gross income of $15,936 from the surrender of the annuity.  Respondent further determined that petitioners are liable for the accuracy-related penalty under section 6662(a) for a substantial understatement of income tax.

Petitioners timely filed with the Court a petition disputing the determined deficiency as well as the accuracy-related penalty.

Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The burden of proof may shift to the Commissioner under section 7491 in certain circumstances. Petitioners do not contend that section 7491(a) applies in this

case. Consequently, we hold that petitioners have the burden of proof as to any disputed factual issue. See Rule 142(a). With respect to a taxpayer's liability for any penalty, however, section 7491(c) places on the Commissioner the burden of production.

A. Anchor Distribution

Petitioners do not dispute that Julie received from Anchor a check payable to her in the amount of $27,641, which check represented the lump-sum cash surrender value of the annuity. Petitioners contend that Phyllis listed Julie as the successor owner subject to an oral trust, with the intent and instruction that Julie distribute the funds to the children upon Phyllis's death. Moreover, petitioners assert that Phyllis's instruction to Julie is consistent with the directives in her 1991 Trust and will that her estate be distributed equally among the children. Petitioners further assert that when Julie received the distribution, she did not take any part of the distribution, but complied with Phyllis's directive and divided the distribution equally among the children. Petitioners therefore contend that the distribution should not be included in their gross income.

Respondent, on the other hand, does not dispute that Julie distributed the proceeds one-third each to Mark, Paul, and Heidi, but contends that petitioners must include the distribution in their gross income because Julie was entitled to the entire

distribution under the terms of the annuity. On brief, respondent further contends that Phyllis's oral statement to Julie did not create a trust.

Clearly, Phyllis's naming of Julie as the successor owner of the annuity constituted a nonprobate transfer of the annuity to Julie. See Cal. Prob. Code sec. 5000 (West 1991). The question thus presented is whether Julie received the distribution subject to an oral trust to distribute the annuity proceeds to the children upon Phyllis's death.

Under California law, it is well settled that a trust over personal property may be created orally and established by parol evidence. Cal. Prob. Code sec. 15207 (West 1991);[5] see Fahrney v. Wilson, 4 Cal. Rept. 670, 672-673 (Dist. Ct. App. 1960). The essential elements of a trust, whether oral or written, under California law are: (1) A manifestation of an intention by the settlor to create a trust; (2) a proper trust purpose; (3) trust property; and (4) an identifiable beneficiary. Cal. Prob. Code secs. 15201-15205 (West 1991). A trust may be created by the "transfer of property by the owner, by will or by other instrument taking effect upon the death of the owner, to another

---

[5] As relevant herein, Cal. Prob. Code sec. 15207 (West 1991) provides: (a) An oral trust of property may be established only by clear and convincing evidence; and (b) the oral declaration of the settlor, standing alone, is not sufficient evidence of the creation of a trust of personal property.

person as trustee."  Cal. Prob. Code sec. 15200(c) (West 1991).

Our findings in this case are based in part on the testimony of petitioners.  Here, we found petitioners to be honest, sincere, and credible witnesses.

In the instant case, Phyllis designated Julie as the successor owner of the annuity contract.  Phyllis had a very close relationship with Julie, which evidently reassured Phyllis that, by naming Julie as the successor owner, Julie would ensure that the annuity proceeds were distributed for the benefit of the children consistent with Phyllis's intent.  At the time that Julie learned about Phyllis's intent, Julie clearly understood that the funds were for the benefit of the children.  Indeed, upon Phyllis's death, Julie immediately cashed the check from Anchor and distributed the proceeds equally to the children.  On the basis of the record before us, we conclude that Phyllis designated Julie as the successor owner pursuant to an oral trust wherein Julie would distribute the annuity proceeds for the benefit of the children.

Respondent contends, however, that Phyllis's oral statement to Julie is not sufficient evidence of the creation of a trust. We disagree.  The California Law Revision Commission Comment to California Probate Code section 15207(b) states that for purposes of this section:

> [the] delivery of personal property to another person
> accompanied by an oral declaration by the transferor that

the transferee holds it in trust for a beneficiary creates a valid oral trust.  Constructive delivery, such as by earmarking property or recording it in the name of the transferee, is also sufficient to comply with * * * [California Probate Code section 15207(b)].

Here, Phyllis essentially "delivered" the trust property to Julie when she named Julie as the successor owner.  Moreover, Phyllis made an oral declaration to Julie instructing her to distribute the annuity to the children upon Phyllis's death. Indeed, Julie immediately complied with Phyllis's directive upon Phyllis's death.

Based on our conclusion that Julie received the distribution in trust for the benefit of the children, we hold that Julie did not receive the distribution in her personal capacity, and, therefore, the distribution is not income to her.  See Healy v. Commissioner, 345 U.S. 278, 282 (1953) ("[R]eceipts by a trustee expressly for the benefit of another are not income to the trustee in his individual capacity, for he 'has received nothing * * * for his separate use and benefit'".), quoting Eisner v. Macomber, 252 U.S. 189, 211 (1920).

We now turn to whether any part of the distribution constitutes income to Mark.  For tax purposes, amounts required to be distributed to a beneficiary from a trust corpus are includable in the gross income of the beneficiary.  Sec. 662(a). Indeed, the beneficiaries of the oral trust were the three children.  As one of those beneficiaries, Mark received in his

personal capacity one-third of the distribution.  Thus, petitioners, having filed a joint return, must include one-third of the distribution in their gross income.  See secs. 61(a)(9), 662(a).  Therefore, such amount, less one-third of the consideration paid for the contract, is includable in petitioners' gross income.

B.    Section 6662(a) Substantial Understatement of Income Tax

The last issue for decision is whether petitioners are liable for an accuracy-related penalty pursuant to section 6662(a) for the year in issue.  As previously mentioned, section 7491(c) places on the Commissioner the burden of production with respect to a taxpayer's liability for any penalty.

Section 6662(a) imposes a penalty equal to 20 percent of any underpayment of tax that is due to a substantial understatement of income tax.  See sec. 6662(a) and (b)(2).  An individual substantially understates his or her income tax when the reported tax is understated by the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).  Tax is not understated to the extent that the treatment of the item is (1) based on substantial authority, or (2) relevant facts are adequately disclosed in the return or in a statement attached to the return, and there is a reasonable basis for the tax treatment of such item by the taxpayer.  Sec. 6662(d)(2)(B).

Moreover, the accuracy-related penalty does not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c); sec. 1.6664-4(b), Income Tax Regs.; see United States v. Boyle, 469 U.S. 241, 242 (1985). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of a taxpayer's effort to assess the taxpayer's proper tax liability for such year. Id.

Based on our holding on the first issue as well as respondent's concession, see supra note 2, we hold that respondent did not satisfy the burden of production under section 7491(c) because petitioners did not substantially understate the income tax on their return. Sec. 6662(d)(1)(A); Higbee v. Commissioner, 116 T.C. 438, 442 (2001). Accordingly, we hold for petitioners on this issue.

Conclusion

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issues, as well as the parties' concessions,

Decision will be entered under Rule 155.